[No. 19489.    Department Two.—March 13, 1895.]

MARY K. HENDERSON, RESPONDENT, v. A. J. O'CONOR, RECEIVER, ETC., APPELLANT.

INSOLVENT BANK—PROCEEDS OF DRAFT DEPOSITED FOR COLLECTION—AGENCY—TRUST.—Where a draft on a bank in another state is deposited for collection in a bank of this state the relation between the depositor and the bank is that of principal and agent, and the bank has no title to the draft, or to the proceeds thereof, nor is the receipt of the money by its correspondent as subagent of the bank a collection of it by the bank; and where the bank authorized to collect the draft becomes insolvent after notice of collection of the draft by its correspondent, and, after placing to the credit of the depositor on its books the amount of the draft without authority from the depositor, the subsequent receipt of the money collected on the draft by the receiver of the insolvent bank is a receipt of money held in trust for the depositor of the draft, and not a part of the assets of the bank to be distributed to its creditors, and the depositor may recover such proceeds from the receiver.

APPEAL from a judgment of the Superior Court of San Diego County.

The facts are stated in the opinion.

CVI. CAL.—25

*V. E. Shaw,* and *Charles Wellborn,* for Appellant.

Where a bank makes a collection of a draft, and credits the party for whom the collection has been made, as if it were an ordinary payment on deposit, it thus establishes the relation of banker and depositor between itself and him. (1 Morse on Banks and Banking, sec. 248; *Marine Bank* v. *Rushmore,* 28 Ill. 463; *Tinkham* v. *Heyworth,* 31 Ill. 519; *Planter's Bank* v. *Union Bank,* 16 Wall. 483; *Duncan* v. *Magette,* 25 Tex. 245.) Proceeds received after the bank becomes insolvent are held in trust, and may be recovered in full. But, if the proceeds are collected and credited before insolvency, the owner cannot recover in preference to the other creditors. (Morse on Banks and Banking, sec. 248; *Bank* v. *Russell,* 2 Dill. 215; *People* v. *City Bank,* 93 N. Y. 582.) If the collection is made and credited to the creditor, and the money is mingled with other funds of the bank, the bank is liable as a simple contract debtor. (2 Am. & Eng. Ency. of Law, 112; *Tinkham* v. *Heyworth, supra, Jockusch* v. *Towsey,* 51 Tex. 129; *In re West of England Bank,* L. R. 11 Ch. Div. 772.) The Consolidated National Bank had, at the time of its failure, actually collected and received the money as the proceeds of plaintiff's draft. (*Reeves* v. *State Bank,* 8 Ohio St. 466, 481, 482; *Howard* v. *Walker,* 92 Tenn. 452; *Commercial Bank* v. *Armstrong,* 148 U. S. 50.) Even if it were true that the bank had no right to place the proceeds of the draft to plaintiff's account upon its books, and a trust were violated and the funds misapplied, yet, the proceeds of the draft having been mingled with the other moneys of the bank, plaintiff cannot distinguish or identify her money or any fund containing it, and cannot have a judgment for its recovery. (*Illinois Trust etc. Bank* v. *First Nat. Bank,* 15 Fed. Rep. 859; Morse on Banks and Banking, secs. 590 (*a*), 589 (*b*), 629, 630; *Illinois Trust etc. Bank* v. *Smith,* 21 Blatchf. 275; *Bank of Commerce* v. *Russell, supra; Vail* v. *Newark Savings Inst.,* 32 N. J. Eq. 629; *Terhune* v. *Bank of Bergen,* 34 N. J. Eq., 367; *Carlton* v. *Conroy,* 21

Cal. 170; *Lathrop* v. *Bampton*, 31 Cal. 17, 24; 89 Am.
Dec. 141; *Rowland* v. *Madden*, 72 Cal. 17; *Roach* v. *Ca-
raffa*, 85 Cal. 436, 444; 2 Story's Equity Jurisprudence,
sec. 1259; *Otis* v. *Gross*, 96 Ill. 612; 36 Am. Rep. 157;
*Mutual Accident Assn.* v. *Jacobs*, 141 Ill. 261; 33 Am. St.
Rep. 302; *Wilson* v. *Coburn*, 35 Neb. 530; *Cavin* v. *Glea-
son*, 105 N. Y. 256; *Atkinson* v. *Rochester Printing Co.*, 114
N. Y. 168; *Philadelphia Nat. Bank* v. *Dowd*, 38 Fed. Rep.
173; *Commercial Nat. Bank* v. *Armstrong*, 39 Fed. Rep.
685; *First Nat. Bank* v. *Armstrong*, 42 Fed. Rep. 193;
*Merchants and Farmers' Bank* v. *Austin*, 48 Fed. Rep. 25.)

*Trippet, Boone & Neale*, for Respondent.

The collection of the draft was not complete at the
time of the failure of the bank, as the collecting bank
had not, in fact, received the money. (*Commercial Bank*
v. *Armstrong*, 148 U. S. 57; *Ward* v. *Smith*, 7 Wall. 447.)
The act of the bank in crediting the respondent with
the amount as if it had been collected did not make the
bank the owner of the draft, and, the bank becoming
insolvent, the respondent, who was the real owner of the
draft, could claim in preference to the general creditors.
(*Levi* v. *National Bank*, 5 Dill. 104; *German-American
Bank* v. *Third Nat. Bank*, 18 Alb. L. J. 252; *St. Louis etc.
Ry. Co.* v. *Johnston*, 133 U. S. 566; *Morse* v. *Satterlee*, 81
Iowa, 491; *Commercial Bank* v. *Armstrong*, 148 U. S. 58.)
The money collected on the draft was specifically trace-
able, and could be followed and collected from the re-
ceiver. (*Commercial Bank* v. *Armstrong*, 39 Fed. Rep.
684; 148 U. S. 50. See, also, *Moore* v. *Jones*, 63 Cal.
15.) When a bank receives a draft for collection, and
forwards the same to another bank, and the other bank
collects it and places it to the credit of the first bank,
and notifies the first bank of the collection, and, upon
receipt of such notice, the first bank credits the owner,
and afterward the first bank becomes insolvent before
receiving the money from the second bank, the owner
is entitled to the proceeds in the hands of the second
bank as against the receiver of the first bank. (*Arm-*

*strong* v. *National Bank*, 90 Ky. 432, cited with approval in *Commercial Bank* v. *Armstrong, supra; Fifth Nat. Bank* v. *Armstrong*, 40 Fed. Rep. 49.) Where the agent bank has drawn out a portion of the funds in the hands of the subagent bank the balance is a trust fund in favor of the owner. (*Importers and Traders' Nat. Bank* v. *Peters*, 123 N. Y. 272.) The mere crediting the transmitting bank with the proceeds of the collection by the subagent bank is not enough to show that the collection had been so far made as to justify the bank in changing its relation of agent to that of debtor. (*Armstrong* v. *National Bank*, 80 Ky. 431; *Levi* v. *National Bank, supra; Marine Bank* v. *Fulton Bank*, 2 Wall. 252; Morse on Banks and Banking, 3d ed., sec. 568; *Importers and Traders' Bank* v. *Peters, supra; Morse* v. *Satterlee, supra; National Exch. Bank* v. *Beale*, 50 Fed. Rep. 355; *McLeod* v. *Evans*, 66 Wis. 401; *Beale* v. *National Exch. Bank*, 55 Fed. Rep. 894; *Jones* v. *Kilbreth*, 49 Ohio St. 401; *First Nat. Bank* v. *Armstrong*, 36 Fed. Rep. 59; *Commercial Nat. Bank* v. *Hamilton Nat. Bank*, 42 Fed. Rep. 880; *Commercial Nat. Bank* v. *Armstrong, supra; Commercial Bank* v. *Armstrong, supra.*)

VANCLIEF, C.—On June 7, 1893, the Consolidated National Bank, incorporated under the national banking laws of the United States, was doing a general banking business in the city of San Diego in this state, but on June 21, 1893, failed, and suspended payment; and on July 23, 1893, the defendant was appointed receiver of said bank.

On said seventh day of June, 1893, the plaintiff deposited with that bank for collection a draft in her favor drawn by the Mutual Benefit Life Insurance Company, of Newark, New Jersey, on the National State Bank of Newark, New Jersey, for the sum of fifteen hundred and twenty-one dollars and forty-two cents. The bank (of San Diego) refused to accept the draft as a deposit, but advanced to plaintiff on her check, at the time the draft was taken for collection, twenty-one dollars and forty-

two cents, and charged her with this sum on its books as an overdraft. At the same time the plaintiff directed the bank of San Diego to deposit the proceeds of the draft when collected in the Savings Bank of San Diego County, whose place of business was in the same rooms as that of said Consolidated National Bank, but later on the same day countermanded this order, and directed said bank to wait until she returned from a visit she intended to make to Oceanside, from which she expected to return in about three weeks, and that she would then give definite instructions as to what should be done with the proceeds of the draft.

Said bank immediately forwarded the draft by mail to its correspondent, Kuntze Bros., bankers in New York, for collection, with instructions to collect and place to its credit.

On June 14, 1893, Kuntze Bros. collected the draft and credited the proceeds as instructed, and immediately notified said bank thereof by mail; and the notice was received by the bank on June 20, 1893, when it placed to the credit of the plaintiff on its books the sum of fifteen hundred and twenty-one dollars and forty-two cents; and on the following day (June 21st) failed, and suspended payment.

The plaintiff had no notice that the draft had been collected, nor that the bank had credited her on its books with the sum collected by Kuntze Bros. until after the failure of said bank.

For a long time before the failure said consolidated bank, including all the times of the transactions above stated, had a running account with Kuntze Bros. in which it was credited with collections made for it by the latter, and charged with its drafts against such collections, some of which drafts were paid and charged after the collection of the draft in favor of plaintiff; but at all times after the collection of this draft said consolidated bank was credited in said account by a sum largely in excess of the amount of this draft, and also

largely in excess of the total amount of drafts drawn by said bank on Kuntze Bros.

Since the failure of said bank the defendant, as receiver thereof, has collected from Kuntze Bros. the balance of said account to the credit of said bank, amounting to about six thousand dollars, which, among other items, included that of fifteen hundred and twenty-one dollars and forty-two cents, the proceeds of the draft in favor of plaintiff, and mingled the same with the funds of the bank which came into his hands as receiver.

This action was brought to recover the sum of fifteen hundred dollars as the proceeds of said draft, on the theory that defendant held it in trust for the plaintiff. And, having found the facts substantially as above stated, the court below rendered judgment in favor of plaintiff for the sum demanded.

The defendant brings this appeal from the judgment on the judgment-roll without a bill of exceptions, and contends that, upon the facts found, the judgment should have been in favor of defendant.

I think, however, the judgment is clearly right. The relation between the plaintiff and the bank resulting from the original contract for the collection of the draft was that of principal and agent, giving the bank no title to the draft or to the proceeds thereof; and that relation continued to exist until after the failure of the bank, because the obligation of the bank to collect the money on the draft had not been completely discharged at the time of the failure. The receipt of the money on the draft by the bank's subagent, Kuntze Bros., was not a collection of it by the bank; and the bank had no right to credit plaintiff with the money proceeds of the draft on its books, and thereby to change its relation to the plaintiff from that of agent to that of debtor, until after it had actually received the money from Kuntze Bros. At the time of the failure of the bank the cash proceeds of the draft in the hands of Kuntze Bros. was the property of the plaintiff, and as such came directly

from Kuntze Bros. to the hands of the receiver, who holds it in trust for plaintiff, it being sufficiently distinguishable from the funds of the bank, and therefore it is not a part of the assets of the bank to be distributed to its creditors. The rule of law applicable to the facts of this case is stated and exemplified by Mr. Morse in his work on Banks and Banking, section 568, subdivision *d,* as follows:

"A bank, upon receiving from L. a draft indorsed 'for collection on his account,' provisionally credited him with it, presented it for payment and surrendered it to the drawee on receiving his check for the amount, but, instead of demanding the money thereon, had the check certified as good, and on the same day suspended payment. The next day the check was collected and the money mingled with other money in the hands of the receiver. It was decided that he held it in trust for L. The bank had no authority to take any thing but money. Receiving a check and having it certified was not a completion of its agency to collect. That duty terminated only with payment of the check, and only then did the authority to credit arise if the bank was a going concern. But the bank became insolvent before the agency was completed and the money received, so that no authority existed to credit the money on general account, and it was still trust money at the time it went into the hands of the receiver, and, being clearly traced into his hands, may be recovered." (Citing *Levi* v. *National Bank,* 5 Dill. 104; *First Nat. Bank* v. *First Nat. Bank of Richmond,* 76 Ind. 561; 40 Am. Rep. 261; and *German-American Bank* v. *Third Nat. Bank,* 2 Tex. L. J. 150.)

The following cases are also more or less directly in point: *Armstrong* v. *National Bank,* 90 Ky. 431; *Importers and Traders' Bank* v. *Peters,* 123 N. Y. 272; *National Exch. Bank* v. *Beal,* 50 Fed. Rep. 355; *McLeod* v. *Evans,* 66 Wis. 401; *Beal* v. *National Exch. Bank,* 55 Fed. Rep. 895; *Jones* v. *Kilbreth,* 49 Ohio St. 40; *First Nat. Bank* v.

*Armstrong*, 36 Fed. Rep. 59; *Commercial Nat. Bank* v. *Armstrong*, 148 U. S. 50.

I think the judgment should be affirmed.

HAYNES, C., and BELCHER, C., concurred.

For the reasons given in the foregoing opinion the judgment is affirmed.

HENSHAW, J., McFARLAND, J., TEMPLE, J.