[Sac. No. 124. Department One.—October 13, 1897.]

## JOHN C. DAVIS, Respondent, v. FIRST NATIONAL BANK OF FRESNO, Appellant.

BANKS—DRAFT RECEIVED FOR COLLECTION—NEGLIGENCE.—A bank which receives for collection a draft drawn upon another bank, acts as agent for such collection, and is bound to exercise reasonable care and diligence as well in the employment of its subagents as in the discharge of any other of the duties assumed by it. If, in making the collection, it follows the course usually taken by banks under similar circumstances, it cannot be held to have been negligent.

ID.—IDENTIFICATION OF SIGNATURE OF PAYEE—SENDING DRAFT TO DRAWER—USAGE OF BANKS.—If the payee and his signature were unknown to the collecting bank, and it had no reason to believe that the drawee had knowledge thereof, the question whether or not it was negligent in sending the draft to the drawer for identification is one of fact for the jury; and in an action against the collecting bank to recover the value of the draft on account of its negligence in so sending it, evidence is admissible that the conduct of the bank was in accordance with the usage of banks when making collections of paper presented by persons who were unknown to them.

ID.—KNOWLEDGE OF USAGE.—One who gives a draft to a bank to collect is held to have an implied knowledge of its usage in collecting drafts, so far as such usage does not contravene any rule of law.

ID.—ATTACHMENT OF DRAFT.—If the failure to collect the draft or to return it to the payee was due to its attachment in legal proceeding against the payee, at the place at which it was drawn, such fact would tend to exonerate the collecting bank from negligence, and evidence thereof should have been admitted in the action against it.

ID.—INSTRUCTIONS—NEW TRIAL.—In such an action, where evidence had been given on behalf of the defendant tending to show that it had been authorized by the payee to send the draft to the drawer for identification, an instruction that if the jury found such to be the fact, the defendant was not liable for any loss thereby resulting, and an instruction that "under the evidence there was no need of the defendant forwarding the draft to any place for the purpose of having the signature identified, for it was the duty of the bank upon receiving the draft for collection to have forwarded it for collection to the place where by its terms it was made payable," are conflicting, and the effect of the latter instruction being to neutralize the former, a new trial should be granted.

APPEAL from a judgment of the Superior Court of Fresno County and from an order refusing a new trial. J. R. Webb, Judge.

The facts are stated in the opinion of the court.

George E. Church, and Frank H. Short, for Appellant.

L. L. Cory, for Respondent.

HARRISON, J.—In May, 1893, the plaintiff requested the defendant to cash a draft for seven hundred dollars which had been made on the Fourth National Bank of New York by the First National Bank of Rock Springs, in the state of Wyoming, in favor of Mrs. A. J. Minto, and indorsed by her to him. The plaintiff had arrived in Fresno from the east that morning, and, when asked by the cashier of the defendant if he could be identified by anyone, he replied that he was a stranger in Fresno and knew nobody there. The defendant declined to cash the draft, but offered to take it for collection if he could be identified. He said that he had done business with the bank that had made the draft, and that his signature was with that bank, and was told by the cashier that the draft could be sent there for identification of his signature, and, if found correct, could then be forwarded to New York for collection. The plaintiff said that he thought a draft on New York could be sent for collection without his being identified, but after some discussion, told the cashier: "You know more about it than I do, but I will leave it for collection," and thereupon indorsed the draft and left it with the bank. The defendant sent the draft to Rock Springs for the identification of his signature, but after it was sent it was intercepted by some legal proceedings, the nature of which is not shown by the record, and was not collected or returned to the plaintiff. The present action was brought for the amount of the draft, which the plaintiff charges in his complaint was lost to him by reason of the negligence of the defendant. Judgment was rendered in his favor, and the defendant has appealed.

The basis of the defendant's liability to the plaintiff for its failure to collect the draft is its negligence, and as this was an element in the plaintiff's cause of action, it was incumbent on him to establish it. In making the collection the bank was acting as the agent of the plaintiff, and from the nature of the transaction was required to employ a subagent, and, as the agent of the plaintiff, was bound to exercise reasonable care and diligence, as well in the employ of its subagent as in the discharge of any other of the duties assumed by it. If in making the collection it followed the course usually taken by banks under similar circumstances it cannot be held to have been negligent. (*Dorchester Bank v. New England Bank*, 1 Cush. 177; *Indig v.*

*National City Bank*, 80 N. Y. 105.)   To procure an identification of the plaintiff's signature was under the circumstances a reasonable step to take for the purpose of collecting the draft. It would have been futile for the defendant to send the draft directly to the drawee in New York for collection unless it would itself vouch for the genuineness of the plaintiff's indorsement, for it was not suggested by the plaintiff that the drawee knew his signature, and the drawee would have been authorized to decline payment unless the indorsement was in some mode shown to it to be genuine.   The plaintiff was unknown to the defendant, told its officers that he was a stranger in Fresno and knew no one there, and, when told by them that they would not take the draft for collection unless he could be identified, persisted in leaving the draft with them for collection, but gave them no means of identifying him except through his signature with the bank at Rock Springs.   Whether under these circumstances, the defendant was negligent in sending the draft to Rock Springs was therefore a question of fact which should have been submitted to the jury.   The court, it is true, instructed the jury that: "If, through the negligence and fault of the defendant, the defendant has never returned to the plaintiff the draft handed to it, nor the proceeds thereof, the plaintiff has made out a *prima facie* case of negligence against the defendant."   This was, however, only a truism, and did not aid the jury in reaching a verdict.   The court should have instructed them with reference to the evidence in the case, and whether, if any of the facts claimed thereby were established, they would constitute such negligence on the part of the defendant as would render it liable.

The court should also have permitted the defendant to show by the witnesses, which it called for that purpose, the usage of banks in regard to the collection of paper presented by persons who were unknown to them, and that the defendant conformed to that usage.   (*Warren Bank v. Suffolk Bank*, 10 Cush. 582.) If such usage was reasonable and did not contravene any principles of law, the fact that the defendant followed it would tend to show that it exercised reasonable care in seeking to collect the draft.   One who gives a draft to a bank to collect is held to have an implied knowledge of its usage in collecting drafts, so far as such usage does not contravene any rule of law. (Morse

on Banking, sec 9; *Bank of Washington v. Triplett,* 1 Pet. 25.) "The fact that one deals with the bank without taking the trouble to inquire as to its system will raise the implication that he already knows and is satisfied with that system. It is clear that if a person hands over a note to a bank for collection, without any species of remark as to the course to be pursued, the bank is not bound to thrust upon him a statement of its intended course and to retain him until the whole theory has been expounded to him, when his conduct unmistakably shows that either he already knows it, or else he does not desire to know it. Either he knows and approves it, or he voluntarily trusts to the wisdom of the bank at his own deliberately assumed risk of its sufficiency. In such a case the bank not only has a right to assume, but it is even positively bound to assume, that his desire is that the ordinary and established usage be pursued." (Morse on Banking, sec. 221.) The plaintiff has cited certain cases in which it has been held negligence *per se* for a bank to send the paper given it for collection directly to the party from whom collection is to be made; but this principle is inapplicable to the present case, as the draft was not sent to the party primarily liable thereon, nor was it sent to the Rock Springs Bank for any other purpose than for the identification of the plaintiff's signature; and it was so sent with the knowledge and implied assent of the plaintiff, for the reason that he was unable to secure his identification in any other mode.

There is some evidence in the record tending to show that the draft was attached at Rock Springs in some proceeding against the plaintiff, the nature of which is not shown, and that an action was brought there by the plaintiff in the name of the defendant to recover the draft. If the failure to collect the draft or to return it to the plaintiff was by virtue of a *jus tertii,* the defendant should have been permitted to show it, as it would tend to exonerate it from negligence.

The court erred in the third instruction which it gave to the jury. The jury were instructed that the ordinary liability of a bank receiving paper for collection might be varied by agreement between the parties, and also that if they found that the draft was sent to Rock Springs for identification of the plaintiff's signature by his consent, the defendant was not liable for any loss thereby resulting. The third instruction of the court,

therefore, that "under the evidence there was no need of the defendant forwarding the draft to any place for the purpose of having the signature identified, for it was the duty of the bank upon receiving the draft for collection to have forwarded it for collection to the place where by its terms it was made payable," neutralized the effect of the other instruction, and prevented the jury from considering the testimony that had been given on behalf of the defendant to the effect that it had been authorized by the plaintiff to send the draft to Rock Springs. We cannot say that if the jury had been allowed to consider this evidence they would not have found that such authorization was given by the plaintiff. If they had so found, their verdict under the other instructions must have been for the defendant.

The judgment and order are reversed and a new trial ordered.

Van Fleet, J., and Beatty, C. J., concurred.