[Civ. No. 281. First Appellate District.—April 18, 1907.]

## SAN FRANCISCO NATIONAL BANK, Respondent, v. AMERICAN NATIONAL BANK OF LOS ANGELES, Appellant.

Banks—Custom as to Collection of Paper—Knowledge Imputed to Depositor—Contract of Agency.—A reasonable custom of all the banks of a place that none of them shall be liable for commercial paper deposited with any one of them for collection elsewhere, until the proceeds thereof in actual money shall come to their possession, must be conclusively deemed known to the depositor, and to be binding upon him as an implied condition of the contract of agency, without reference to his knowledge or want of knowledge of the custom.

Id.—Draft Forwarded for Collection—Failure of Collecting Bank —Loss of Drawing Bank.—Where such a custom existed in the banks of San Francisco and Los Angeles, and a bank of the former city sent a draft to a bank of the latter for collection in Arizona, and the collecting bank in Arizona failed after collection, the loss must fall upon the San Francisco bank, which drew the draft.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Thos. F. Graham, Judge.

The facts are stated in the opinion of the court.

Lynn Helm, for Appellant.

S. C. Denson, for Respondent.

KERRIGAN, J.—The plaintiff placed a draft with the defendant for collection, the defendant forwarded the draft to a bank at Arizona for collection, which bank collected the draft, failed, and no part of the proceeds has ever reached any of the parties hereto. The action was tried by the court on an agreed statement of facts; judgment was rendered therein for plaintiff, from which judgment the defendant appeals.

The agreed statement of facts, in part, is as follows: The Judson Dynamite and Powder Company, of San Francisco, held a check, dated December 17, 1903, on the Sandoval Na-

tional Bank of Nogales, Arizona, for the sum of $637.97, which check was, December 21, 1903, by the powder company, indorsed to the San Francisco National Bank, and deposited with it for collection. The same day that bank indorsed the check to "any bank or banker," and sent it to the American National Bank of Los Angeles "for collection and return." The American Bank of Los Angeles received the check December 22, 1903. It thereupon examined a directory of banks and bankers, and learned that there were two banks at Nogales, one the bank on which the check was drawn, and the other the International Bank of Nogales, whereupon it indorsed the check "American National Bank of Los Angeles, to any bank or banker," and forwarded it to the International Bank of Nogales for collection, by which bank it was received and collected in cash December 28, 1903. On the same day the International Bank of Nogales sent the American National Bank of Los Angeles a draft for $636.72, drawn on the National Bank of Commerce of New York, which was received in due course of mail and immediately forwarded by the Los Angeles Bank to the Corn Exchange Bank in New York for collection, by which bank it was received January 7, 1904, and the next day presented to the National Bank of Commerce for payment. Payment was refused because of insufficient funds, and the draft was duly protested for nonpayment. The International Bank of Nogales failed January 15, 1904, and was utterly insolvent. In the meantime, on January 8, 1904, the Corn Exchange Bank of New York telegraphed the defendant of the nonpayment of the draft and that the draft had gone to protest, and thereupon, on the same day, defendant telegraphed to the International Bank of Nogales as follows: "Your draft of December 28 on National Bank of Commerce for six hundred thirty-six is protested. Protect and wire the money to pay." In response the International Bank of Nogales telegraphed the defendant: "Draft protested for reason that currency remittance to our New York correspondent went astray. We follow your instructions and cover same by wire."

January 15, 1904, the defendant telegraphed the National Bank of Commerce that the protested draft was being returned for collection, that the International Bank had wired funds covering said draft, and requested the National Bank of Commerce to hold the amount for return of draft to it. On

the same day the National Bank of Commerce replied that the account was not good for the check mentioned, and that it could not meet the request of the defendant. The defendant wrote to the plaintiff January 14, 1904, and as the contents of that communication are sufficiently referred to in the reply thereto, dated January 19, 1904, only the reply need be given. It is:

"We are in receipt of your favor of the 14th inst., confirming your telegram of even date, and note your suggestion in regard to charging back item of $637.97, on Sandoval National Bank of Nogales, and replying to same have referred the matter to our client, and he wired to the maker of the check, in Nogales, and has reply to-day stating that the check was paid, and that the money was in the hands of your agent at Nogales. Our client therefore declines to reimburse us in the matter, and inasmuch as we cannot return to them the original check, we are inclined to think that they are right, and that at the time the check was paid to your agent our responsibility in the matter ceased. Is this not correct?"

It is the custom of banks in each of the cities of San Francisco and Los Angeles, by recommendation of their several clearing-houses, that in receiving notes, drafts and checks on points other than said respective cities of San Francisco and Los Angeles, either for collection or credit, that the bank with which said check is deposited for collection shall transmit the same in the usual manner for collection, either to the bank on which it is drawn, or to such bank or persons as it may deem reliable, with the express understanding that the same is done simply for account and convenience of the depositor, and that the bank so receiving said item for collection shall in no wise be liable for default of any such bank, person or agents, or for loss in transit, or for any other cause whatever until the proceeds in actual money shall come into its possession.

There is a great diversity and conflict of opinion on the question mainly discussed in the briefs, namely, what is the extent of the duty and responsibility of a bank which receives an instrument for collection at a place different from its place of business, and how far it is liable for the acts of its correspondents or agents in the performance of their duty. One class of cases maintains the absolute liability of a bank for any default or neglect of its correspondent or collection

agent in the same manner as it would for the default of its own employees, regarding the correspondent or collector as the agent of the bank, and not the agent of the owner of the commercial paper. Another class of cases holds the bank receiving the claim for collection at a place distant from the place where it conducts its business liable only for failure to exercise due care and diligence in selecting a trustworthy agent or correspondent, and if it exercise such care and diligence the bank is exonerated from all liability. The view, however, we have reached in the case on other points renders it unnecessary to analyze and discuss the various conflicting decisions on this question.

1. The trial court held that the defendant was guilty of negligence in accepting and forwarding for collection the draft on New York sent it by the International Bank of Nogales; that it should have insisted upon payment of the money. In reaching this conclusion the court doubtless relied upon the general principle of law that as commercial paper is payable in money only, a collecting bank is not authorized to receive in payment anything but money (Selover on Bank Collections, secs. 46, 47), but defendant did not take the New York draft as payment. At the time of receiving the draft on New York the defendant might have sent it back to the International Bank of Nogales, and demanded payment of the money, or it might have pursued some other course than the one it did adopt, but no fair inference can be drawn from the statement of facts that any other method might with reasonable probability have resulted in a collection from the International Bank of Nogales. There are respectable authorities which hold that it is the custom of banks to remit by check or draft or certificate for the proceeds of any collection, instead of remitting the exact money collected, and that this custom is so general and universal that courts take judicial notice of it (Selover on Bank Collections, sec. 127, and cases cited), but we do not rest our decision on this line of authorities. We take the position that there is nothing in the record which would warrant the conclusion that the defendant was remiss in any duty or obligation it owed the plaintiff. By the custom before referred to the Judson Dynamite and Powder Company, when it deposited the draft with plaintiff for collection, authorized the plaintiff to transmit the same through the usual channels for such collection. It was not expected

that the plaintiff would send a messenger from San Francisco to Nogales for the purpose of collecting the draft. Under the custom plaintiff only undertook to transmit the draft, through the usual channels, either to the bank on which it was drawn, or to such bank as it might deem reliable, with the one understanding that the same was done simply for account and convenience of the Judson Dynamite and Powder Company, and that it should not be responsible for the default of any such bank, or for any cause whatever, until the proceeds in actual money should come into its possession. The plaintiff transmitted the draft to the American National Bank of Los Angeles, a bank which it deemed reliable. It was not guilty of any negligence in making such selection of the Los Angeles bank, and is not liable to the Judson Powder Company for any default of such bank. The money never came into the hands of the plaintiff. The same may be said as to the deposit of the draft by the plaintiff with the Los Angeles bank for collection. The Los Angeles bank sent the draft to the International Bank of Nogales, in the usual manner, and was guilty of no negligence in selecting the International Bank as its agent at Nogales. The Los Angeles bank never received the money, and the proceeds of the draft never came into its possession. When the International Bank of Nogales collected the money it collected it under the custom as agent for the Judson Dynamite and Powder Company, it having been selected through the agencies of which the plaintiff availed itself, and which the powder company impliedly agreed to, when it left the draft with plaintiff for collection. From the time the International Bank of Nogales collected the money, it became the debtor of the Judson Dynamite and Powder Company. It appropriated the money and has not paid the powder company. It would not be in accord with the custom to hold the defendant for the default of an agent not in its employ, and of whose services it availed itself with no fault or negligence in the selection.

2. At the time the plaintiff bank sent the draft in question to the defendant bank at Los Angeles for collection, there was a custom among banks of that city to which reference has already been made. That part of it pertinent here in substance absolved the banks at Los Angeles from default of their correspondents in collecting checks or drafts at other points than Los Angeles.

While the identical custom prevailed in San Francisco as in Los Angeles, there is nothing in the agreed statement of facts from which we can conclude that the plaintiff knew of the existence of the custom in Los Angeles. Knowledge of a custom must, according to some decisions, be brought home to parties who are bound by it; but the better authorities declare that the custom of banks of a place is binding on parties who deal with a bank there, whether they are aware of its existence or not. In *Jefferson County Sav. Bank* v. *Commercial Nat. Bank*, 98 Tenn. 337, [39 S. W. 338], it is said: "A principal who selects a bank as his collecting agent, thus availing himself of the facilities which it holds out, in the absence of special directions, is bound by any reasonable usage prevailing and established among the banks at the place where the collection is made without regard to his knowledge or want of knowledge of its existence." In *Sallien* v. *Bank of Roanoke*, 90 Tenn. 221, [16 S. W. 374], it is held that the great weight of authority is that a reasonable custom of all the banks of a place, though not known to a party sending paper for collection to one of them, is binding upon the sender as a part of the contract of agency, to which the sender impliedly assents by selecting the bank without inquiry or without especial instructions.

Selover on Bank Collections, section 10, says: "Where the custom is general and reasonable, the depositor of paper for collection is bound thereby, though he did not know of it."

In Morse on Banks and Banking (section 231) it is said: "Knowledge of the usage, either express or implied, must, it has been said, be brought home to the parties who are to be bound by it. (*Mills* v. *Bank of United States*, 11 Wheat. 431; *Peirce* v. *Butler*, 14 Mass. 303.) But other cases of high authority declare that the usage of the bank in collections will bind the person dealing with it in this business, whether such usage be known to him or not (*Smith* v. *Whiting*, 12 Mass. 6, [7 Am. Dec. 25]; *Bank of Washington* v. *Triplett*, 1 Pet. 25; *Dorchester & Milton Bank* v. *New England Bank*, 1 Cush. (Mass.) 177; *Farmers' Bank & Trust Co.* v. *Newland*, 97 Ky. 472, [31 S. W. 38]; *Jefferson County Sav. Bank* v. *Commercial Nat. Bank*, 98 Tenn. 337, [39 S. W. 339]); and this is certainly the correct rule. Indeed, the opposing cases can be easily reconciled by the link which appears to be suggested in one of them. The facts that one deals with a bank

without taking the trouble to inquire as to its system will raise the implication that he already knows and is satisfied with that system. It is clear that, if a person hands over a note to a bank for collection without any species of remark as to the course to be pursued, the bank is not bound to thrust upon him a statement of its intended course, and to retain him until the whole theory has been expounded to him, when his conduct unmistakably shows that either he already knows it or else he does not desire to know it. Either he knows and approves it, or he voluntarily trusts to the wisdom of the bank, at his own deliberately assumed risk of its sufficiency. In such case the bank not only has the right to assume, but it is even positively bound to assume, that his desire is that the ordinary and established usage be pursued. And an unordered deviation from that usage, though the usage were unknown to him, would lay the bank open to his suit for damages; and the court must, as has been already shown, hold as matter of law that the pursuance of this custom was an implied condition of the contract. It is clear, then, that he could not plead ignorance of it in order to lay a foundation for a suit against the bank for acting according to it. The knowledge on his part would be implied conclusively.'' (See, also, *Id.*, sec. 9.) This is the rule in California. (See *Davis* v. *First Nat. Bank of Fresno*, 118 Cal. 600, [50 Pac. 666].)

A custom must be general as to place and not confined to any particular bank or banks. (Selover on Bank Collections, sec. 10.) The custom under discussion was general as to Los Angeles; it was reasonable, and under the authorities cited the plaintiff was bound by it.

The judgment is reversed.

Cooper, P. J., and Hall, J., concurred.