[L. A. No. 3355. Department Two.—October 2, 1914.]

# D. J. GONYER, Respondent, v. W. R. WILLIAMS, as Superintendent of the State Banking Department of California, Appellant.

BANKS—DEPOSIT OF CHECK ON ANOTHER BANK—CREDIT GIVEN TO DE-POSITOR—RELATION OF DEBTOR AND CREDITOR ESTABLISHED.—Where a regular depositor of a bank in the ordinary course of business, deposits with it a check drawn in his favor on another bank and bearing his indorsement in blank, the title to the check is trans--ferred to the depositary, and upon its placing the amount of the check to the credit of the depositor on its books the relation of debtor and creditor is created between them. It is unnecessary to the creation of such relation that the accounts between the depositary and the bank on which the check was drawn should have been balanced.

ID.—INSOLVENCY OF DEPOSITARY—WANT OF KNOWLEDGE OF BANK'S OFFICERS.—The fact that the depositary was insolvent at the time of the deposit is immaterial to the creation of such relation, if that fact was unknown to its officers at that time.

ID.—DRAFT SENT BANK FOR COLLECTION—PROCEEDS REMITTED BY DRAFT OF COLLECTING BANK—RELATION OF DEBTOR AND CREDITOR—CUS-TOM OF BANKS.—Where a bank, following the customary course of banking institutions in collecting drafts and remitting the pro-ceeds, receives a draft for collection and collects it from the drawee, and then sends to the person entitled to the proceeds, who had knowledge of the banking custom, its own draft on its foreign correspondent for the amount thereof, the manner of remitting the proceeds of the collected draft changes the relation of principal and agent previously existing between the owner of the draft and the collecting bank to that of general creditor and debtor.

ID.—RELATION OF AGENCY CHANGED TO DEBTOR AND CREDITOR.—When paper is received for collection a trust relation often exists in the beginning which is changed by agreement or custom into that of debtor and creditor after the collection of the proceeds. The trans-formation does not affect the depositor unless it is known by him either by agreement or usage.

ID.—ACTION TO RECOVER AMOUNT OF COLLECTION—EVIDENCE OF BANK-ING CUSTOM ADMISSIBLE.—In an action by the owner of the draft sent for collection to recover the amount thereof, brought against the superintendent of banks after the insolvency of the collecting bank, evidence of such banking custom in disposing of the proceeds of collections is admissible, and the custom, if proved, is of con-trolling force.

APPEAL from a judgment of the Superior Court of Kern County.   Paul W. Bennett, Judge.

The facts are stated in the opinion of the court.

Hiram W. Johnson, Jr., and A. A. DeLigne, for Appellant.

George E. Whitaker, and T. N. Harvey, for Respondent.

MELVIN, J.—This was an action against the superintendent of banks to recover the value of two checks and a draft received by the Kern Valley Bank just before it was closed by his order.   The amount of one of the checks, two hundred dollars, was paid by the defendant before the trial of the action.   The court held that three hundred dollars, the money represented by the other check, and one hundred and forty dollars, the proceeds of a certain draft, were held by the defendant in trust for the plaintiff.   From this judgment defendant appeals.

Plaintiff was on May 11, 1911, and for a long time theretofore had been a depositor with the Kern Valley Bank.   On the afternoon of that day he deposited with said bank a check for three hundred dollars drawn in his favor and bearing his indorsement in blank.   Before the close of business on that day the books of the bank were posted and balanced and the amount of the check was placed to the credit of the plaintiff, D. J. Gonyer.   On May 12th before the opening of the bank at 10 o'clock A. M. one of defendant's deputies entered the premises.   Under his instructions the doors were opened as usual for business but all deposits made during that morning were segregated and kept separate from the other funds of the bank.   Shortly before noon the bank closed its doors and subsequently all deposits made on May 12th were returned to the depositors.   Before the doors were closed on the morning of May 12, 1911, the Bank of Bakersfield on which the check for three hundred dollars was drawn balanced its accounts with the Kern Valley Bank with the result that the sum of about one thousand three hundred dollars was found to be due by the latter to the former.

While it is alleged by plaintiff and admitted by defendant that the Kern Valley Bank was in fact insolvent when plaintiff's check was deposited, there is neither allegation nor find-

ing that such insolvency was known at that time to the officers of the bank.    There is therefore no question in this case with reference to the fraudulent receipt by an insolvent institution of an amount tendered for deposit.    Respondent's theory, which was accepted by the trial court, was that the function of the depositary was to collect from the Bank of Bakersfield the amount of the check and place it to the account of the depositor and that until such a transaction was consummated by the balancing of the account of the two banks, Mr. Gonyer did not become a general creditor of the Kern Valley Bank; and that, as the Kern Valley Bank was under the supervision of the state's superintendent of banks when the balance between the two institutions was sought to be figured, it was incapable of transacting business and therefore no general deposit of the three hundred dollars was completed. We cannot agree with this theory of the transaction.    The deposit of the indorsed check by Mr. Gonyer with the Kern Valley Bank, in the ordinary course of business, transferred the title to the instrument from him to the bank.    The transaction was not one which created the relation of principal and agent but rather that of creditor and debtor.    The matter of depositing checks and the ensuing rights and obligations was considered by this department in the case of *Plumas County Bank* v. *Rideout, Smith & Co.*, 165 Cal. 126, 137, [47 L. R. A. (N. S.) 552, 131 Pac. 360], a cause in which a hearing in Bank was denied.    On the authority of that case we must hold that the court erred in deciding that the sum of three hundred dollars was a trust fund held by the superintendent of banks for the benefit of the depositor.    (See, also, *Newmark Grain Co.* v. *Merchants' National Bank,* 166 Cal. 208, [135 Pac. 958].)

The plaintiff sued also on an assigned claim for one hundred and forty dollars.    The history of the transaction out of which that claim arose is as follows: In the early part of May, 1911, the Kern Valley Bank received for collection from the Clauss-Shear Company of Fremont, Ohio, a draft on A. Weill for one hundred and forty dollars.    This was presented and duly paid by the said A. Weill on May 11, 1911.    The Kern Valley Bank, after deducting the usual charge for collection, prepared a draft upon its New York correspondent for the balance of the one hundred and forty dollars and sent said draft to the Clauss-Shear Company.    Before the last

named corporation could present the draft for collection the Kern Valley Bank suspended business; the New York correspondent, therefore, refused to honor the draft and it has never been paid. It was stipulated by the parties that the course pursued by the Kern Valley Bank was that usually followed by banking institutions in collecting drafts and remitting the proceeds.

The money was not a special trust fund but the general assets of the bank were subject to the payment of the draft on the failure of its correspondent in New York to honor its paper. The owners of the money collected from Weill were, therefore general creditors and the court erred in finding that a part of the assets of the bank which passed into the hands of the superintendent of banks constituted a trust fund for the payment of the balance due from the bank as the proceeds of the collection. Nothing in *Henderson* v. *O'Conor,* 106 Cal. 385, [39 Pac. 786], is in conflict with the conclusion which we have reached here. In that case the draft was not collected until after the closing of the bank to which it had been intrusted for collection, and the money due that insolvent institution from its correspondent (including the sum received from the corporation against which the draft was made) was actually paid to the receiver after the insolvency. The money, therefore, had never come into the possession of the bank which, as the plaintiff's agent, had taken the draft for collection. Undoubtedly, the Kern Valley Bank was the agent of the drawer for collecting the draft, but this relation was changed by the manner of remitting the proceeds of the collection, to that of debtor. The rule is thus expressed in 5 Cyc. 516: "When paper is received for collection a trust relation often exists in the beginning which is changed by agreement or custom into that of debtor and creditor after the collection of the proceeds. . . . The transformation does not affect the depositor unless it is known by him either by agreement or usage." In the present case it was known by the plaintiff that it is the custom of banks to credit those sending drafts for collection with the proceeds of the paper after the money has been collected. Such, indeed, is the invariable custom in the absence of a special agreement to the contrary (*First National Bank of Circleville* v. *Bank of Monroe,* 33 Fed. 411), and the stipulation in the present case amounts to an agreement that the course followed by the

Kern Valley Bank was the universal one in such cases. Respondent insists that the contract was complete without recourse to proof or stipulation as to custom. (Citing Code Civ. Proc., sec. 1870, subd. 12.) On the contrary, the contract was for the collection of the draft and the manner of disposing of the assets was clearly one resting in general usage. Proof of such custom is admissible and the general usage when not in contravention of law, is of governing force. (*Davis* v. *First National Bank of Fresno,* 118 Cal. 602, [50 Pac. 666].) "When a draft is forwarded to a bank for collection and remittance, and collection is made, and the proceeds placed in the vaults of the bank, a draft for the amount less charges for collecting being forwarded for payment, such proceeds do not become a trust fund in the hands of the bank." (Morse on Banks and Banking, 4th ed., sec. 248, p. 482. See, also, *Bowman* v. *First National Bank,* 9 Wash. 614, [43 Am. St. Rep. 870, 38 Pac. 211], which is practically identical in its facts with the case at bar.)

It follows that the judgment must be and accordingly it is reversed.

Henshaw, J., and Lorigan, J., concurred.