[Sac. No. 3445.   In Bank.—February 11, 1924.]

## C. J. LUCKEHE, Appellant, v. THE FIRST NATIONAL BANK OF MARYSVILLE, Respondent.

[1] AGENCY—COLLECTION OF DEBT—AUTHORITY.—An agent authorized merely to collect a demand, or to receive payment of a debt, cannot bind his principal by any arrangement short of actual collection and receipt of the money.

[2] ID.—BANKS AND BANKING—AGENCY FOR COLLECTION—PAYMENT—ACCEPTANCE OF CHECK—LIABILITY.—If an agent for collection accepts anything other than cash in payment he will be liable to his principal for any loss the latter may suffer, and this rule is applicable to banks; and if such a bank surrenders paper in its hands for collection in return for a check or other paper of the party upon whom it was drawn, it does so at its own risk, and is liable, irrespective of negligence in the collection of the substituted paper, if that paper is not paid.

[3] ID.—SPECIAL CONTRACT—MEASURE OF DUTY.—Where there is a special contract between the bank and the holder of paper for collection, or where special instructions are given by the holder, such contract or instructions furnish the measure of the bank's duty.

[4] ID.—CERTIFICATE OF DEPOSIT—RECEIPT FOR COLLECTION—ACCEPTANCE OF CHECK—NEGLIGENCE.—Where a bank received from a bank in another county for collection a certificate of deposit issued by a bank in the town where it was located, it was negligent in surrendering the certificate to the issuing bank and accepting its check or draft on a bank in another county, the check being dishonored and the issuing bank having closed its doors.

[5] ID.—EMPLOYMENT OF SUITABLE AGENT—NONLIABILITY FOR NEGLIGENCE.—Where a bank in good faith employs a suitable agent to make a collection it is not liable for the default or neglect of the agent.

[6] ID.—COLLECTIONS—CUSTOM.—If a bank in making a collection follows the course usually taken by banks under similar circumstances, and if such usage is reasonable and does not contravene

---

2.  Liability for taking check or draft in payment of paper held for collection, note, 3 L. R. A. (N. S.) 1179.

6.  Effect of banking customs and usages on liability of collecting bank for default of correspondent, note, 52 L. R. A. (N. S.) 637.

Validity of custom to send paper to drawee for collection, notes, 2 L. R. A. (N. S.) 194; 52 L. R. A. (N. S.) 649.

any principle of law, the fact that the bank follows such usage or custom tends to show that it exercised reasonable care in seeking to collect the account.

[7] ID.—CUSTOM OR USAGE—PROOF.—In order for a bank to justify its actions in handling paper received by it for collection, on the ground of custom or usage, it is incumbent upon it to clearly establish that the custom or usage existed, that it was general and was followed in attempting to make the collection, and it must further appear that the custom or usage was reasonable.

APPEAL from a judgment of the Superior Court of Yuba County. Eugene P. McDaniel, Judge. Reversed.

The facts are stated in the opinion of the court.

Clinton W. Johnson for Appellant.

W. H. Carlin for Respondent.

WASTE, J.—Plaintiff brought this action to recover from the defendant the sum of $1,050, with interest, the amount evidenced by a certain certificate of deposit made and delivered by the defendant to the plaintiff. Judgment was entered for the defendant, and plaintiff has appealed.

On the eleventh day of December, 1920, appellant held an interest-bearing certificate of deposit for $1,050, issued to him by the First National Bank of Gridley. The certificate became due on that date, and appellant, desiring to transfer his account, indorsed the certificate over to the Gridley bank and received for the one surrendered an ordinary certificate of deposit for the same amount, payable on demand. In the afternoon of the same day, which was a Saturday, appellant took the new certificate to the First National Bank of Marysville, indorsed it to the bank, and received in exchange an interest-bearing certificate of deposit of the Marysville bank, in a similar amount, payable six months after date. Respondent mailed the certificate of the Gridley bank to the Rideout Bank, its correspondent in Gridley, for collection. It was received by that bank on Monday, the 13th of December, and, on the same afternoon, was presented to the issuing bank for payment. Instead of demanding and receiving cash, the Rideout Bank surrendered the certificate of deposit, and accepted from the First National Bank of Gridley an exchange draft on

the Anglo & London-Paris National Bank of San Francisco, which it indorsed and mailed to the Marysville bank. Respondent did not notify appellant that it had the check of the Gridley Bank but, in turn, indorsed and mailed it to its San Francisco correspondent, the Mercantile Trust Company. The draft was presented by the latter bank, through the clearing-house, to the Anglo & London-Paris National Bank, where it was dishonored. It was then returned to respondent, without having been paid, and was received by it on December 17th. On the same day respondent notified appellant of the dishonor of the draft, and on the same day the First National Bank of Gridley closed its doors and went into the hands of a receiver at the end of the day's business. After six months had elapsed appellant presented the certificate of deposit issued to him by the Marysville bank to the respondent for payment. Payment being refused, this action was commenced.

The complaint sounds in contract. It states a cause of action based on the certificate of deposit issued by the respondent to appellant, and the refusal of respondent to pay the amount on demand. The allegations of the complaint and the denials of the answer presented an issue based on the theory that the relation subsisting between appellant and respondent was that of creditor and debtor. (*Plumas Co. Bank* v. *Bank of Rideout etc.*, 165 Cal. 126, 138 [47 L. R. A. (N. S.) 552, 131 Pac. 360],) But, at the trial, the case was shifted to one for negligence based on the respondent's liability to the appellant for its failure to collect the amount due on the original certificate of deposit issued to appellant by the First National Bank of Gridley. It was conceded by both parties in the court below that the certificate of deposit issued by the Gridley bank, payable to appellant, and by him transferred to the respondent in exchange for the certificate of deposit set out in the complaint, was received by the respondent for collection, and not otherwise. The relation between appellant and the respondent resulting from the contract for the collection of the amount due on the certificate was, therefore, admitted to be only that of principal and agent. (*Henderson* v. *O'Conor*, 106 Cal. 385, 390 [39 Pac. 786] ; *Davis* v. *First Nat. Bank of Fresno*, 118 Cal. 600, 601 [50 Pac. 666].)

[1] "It is elementary doctrine that 'an agent authorized merely to collect a demand, or to receive payment of a debt, cannot bind his principal by any arrangement short of an actual collection and receipt of the money.' *Ward* v. *Evans*, 2 Ld. Raym. 928; *Ward* v. *Smith*, 7 Wall. 451 [19 L. Ed. 207, see, also, Rose's U. S. Notes]; *Pitkin* v. *Harris*, 69 Mich. 133 [37 N. W. 61]; *Hurley* v. *Watson*, 68 Id. 531 [36 N. W. 726]. . . . The law requires payment in money, and, as already shown, nothing else answers the purpose, except by agreement with the creditor, or his agent duly authorized to accept something else." (*State Bank of Midland* v. *Byrne*, 97 Mich. 178, 179 [21 L. R. A. 753, 754, 56 N. W. 355].) [2] It has been repeatedly held that if an agent for collection does accept anything other than cash in payment he will be liable to his principal for any loss the latter may suffer, and this rule is applicable to banks acting as collecting agents; and if such a bank surrenders the instrument in return for a check or other paper of the party upon whom it was drawn, it does so at its own risk, and is liable, irrespective of negligence in the collection of the substituted paper, if that paper is not paid. (3 R. C. L., sec. 245, pp. 616, 618, and cases cited in notes 18 and 19.) Having no authority to receive, in payment of commercial paper entrusted to it to collect, anything but money, a bank accepting negotiable paper in lieu of currency, for a draft it was employed to collect, does so upon its own responsibility. (*Bradley Lbr. Co.* v. *Bradley Co. Bank*, 206 Fed. 41, 124 C. C. A. 175; *Bank of Antigo* v. *Union Trust Co.*, 149 Ill. 343 [23 L. R. A. 611, 36 N. E. 1029; 1 Morse on Banks and Banking, 3d ed., sec. 252; *Albert* v. *State Bank*, 78 Misc. Rep. 56 [138 N. Y. Supp. 237].) If the collecting bank surrenders the check to the bank upon which it is drawn, and accepts a cashier's check or other obligation in lieu thereof, its liability to its depositor is fixed, as much so as if it had received the cash (*Fifth Nat. Bank* v. *Ashworth*, 123 Pa. St. 212 [2 L. R. A. 491, 16 Atl. 596]), and it must be held to have immediately become indebted to its depositor in the amount which the paper represents. (*Midway Five Oil Co.* v. *Citizens' Nat. Bank*, 25 Cal. App. 366, 368 [143 Pac. 800].) [3] Of course, where there is a special contract between the bank and the holder, or where special instructions are given by the holder, such contract or instructions furnish

the measure of the bank's duty. No instructions were given in this case. Therefore, if it were not for another element which enters into the consideration of the case, we would be compelled to say at once that the plaintiff would be entitled to recover. But it seems to be now well established in this, as in other jurisdictions, that if in making the collection the bank followed the course usually taken by banks under similar circumstances it cannot be held to be negligent. The authorities which lay down this rule will be presently discussed.

[4] In reaching a determination of the present controversy between appellant and the First National Bank of Marysville, the connection of the Rideout Bank at Gridley with the transaction may be eliminated. Under the accepted rules of law laid down by the authorities, the latter was negligent in the first instance in surrendering the certificate of deposit to the First National Bank of Gridley and accepting the check or draft of that bank on its San Francisco correspondent. The Rideout Bank should have insisted on, and received, nothing but money in return for the surrender of the certificate. Had it done so, we may assume no loss would have resulted in this particular case, for the evidence is uncontradicted that on the thirteenth day of December, 1920, and for several days thereafter, the First National Bank of Gridley was paying its obligations in cash when demanded, and that if the Rideout Bank on that day had demanded cash in return for the certificate of deposit, cash would have been paid. [5] It is not disputed here—in fact, we may safely assume from the record—that respondent in good faith employed a suitable subagent at Gridley for the purpose of making the collection. It is, therefore, not liable for the default or neglect of the Rideout Bank. (*Nicoletti* v. *Bank of Los Banos,* 190 Cal. 637 [27 A. L. R. 1479, 214 Pac. 51].) But the negligence of the Rideout Bank does not relieve the respondent from responsibility for the consequent loss, if it was negligent in accepting from its correspondent the check of the First National Bank of Gridley in place of the money which it had engaged to collect. What it did thereafter, it did for itself and not for appellant. (*National Bank of Commerce* v. *American Exch. Bank,* 151 Mo. 320, 330 [74 Am. St. Rep. 527, 52 S. W. 265].) It was not required to accept the check in

lieu of cash. It could have promptly returned that paper to its correspondent and demanded further presentation and collection in cash. Marysville and Gridley are but eighteen miles apart. The evidence shows that the First National Bank of Gridley continued to pay cash until the close of business on December 17th. On the other hand, respondent could have absolved itself from liability by reason of having surrendered appellant's certificate for a check in lieu of the cash, by informing appellant what had been done and securing his sanction of the unauthorized transaction. (*Ward v. Smith,* 74 U. S. 447, 452 [19 L. Ed. 207, see, also, Rose's U. S. Notes].)

Respondent's position is that the certificate of deposit taken by it from appellant was presented by it for payment without delay, and that the collection was handled by it in the ordinary course of business. It cites the sections of the Uniform Negotiable Instruments Act, which relate to the time within which a check must be presented for payment, and which provide that checks must be presented within a reasonable time, and that in determining what is a reasonable time or an unreasonable time regard is to be had to the nature of the instrument, "the usage of trade or business (if any) with respect to such instruments, and the facts of the particular case." (Civ. Code, secs. 3265b and 3266b.) Respondent's contention that the certificate of deposit was promptly presented for payment is not disputed. Its position is perhaps better understood when it says in its brief: "Perhaps the majority of the banks in the interior of the state carry only a limited amount of coin or paper money. They have their correspondent in San Francisco and the matter goes through the clearing-house in San Francisco and is adjusted." In other words, respondent is seeking recourse to a custom or usage of the banking business to relieve it from liability in the present case.

[6] As a general proposition of law, it is, of course, true that every commercial contract is entered into with the understanding that usage in regard to the particular matter of the contract becomes a part of the transaction itself. (*National Bank v. Burkhardt,* 100 U. S. 686, 691 [25 L. Ed. 766]; *Moore v. United States,* 196 U. S. 151, 166 [49 L. Ed. 428, 25 Sup. Ct. Rep. 202, see, also, Rose's U. S. Notes].) The rule has many times been applied to banking transactions and

banks, and this court has held that if a bank in making a collection followed the course usually taken by banks under similar circumstances, and if such usage was reasonable and did not contravene any principle of law, the fact that the bank followed such usage or custom would tend to show that it exercised reasonable care in seeking to collect the draft. (*Davis* v. *First Nat. Bank of Fresno,* 118 Cal. 600, 602 [50 Pac. 666]; see, also, *San Francisco Nat. Bank* v. *American Nat. Bank,* 5 Cal. App. 408 [90 Pac. 558].) In another case in which the contract was for the collection of a draft, the court held that the manner of disposing of the assets was clearly one resting in general usage. It said: "Proof of such usage is admissible, and the general usage, when not in contravention of law, is of governing force." (*Gonyer* v. *Williams,* 168 Cal. 452, 456 [143 Pac. 736].) The rule prevailing in California has been stated to be that "a principal who selects a bank as his collecting agent, thus availing himself of the facilities which it holds out, in the absence of special direction, is bound by any reasonable usage prevailing and established among the banks at the place where the collection is made, without regard to his knowledge of its existence. Knowledge on the part of the customer is implied conclusively. The fact that one deals with a bank without taking the trouble to inquire as to its system will raise the implication that he already knows and is satisfied with that system. So, where a person hands over a note to a bank for collection without any remark as to the course to be pursued, the bank is not bound to thrust upon him a statement of its intended course. The bank not only has the right to assume, but it is positively bound to assume, that the customer's desire is that the ordinary and established course be pursued." (4 Cal. Jur., p. 263, sec. 145.) The same rule prevails in many other jurisdictions. (7 Cor. Jur., p. 612, sec. 273.)

[7] In order to be of binding force in contracts, the custom or usage must be general as to place and not confined to any particular bank or banks. (*San Francisco Nat. Bank* v. *American Nat. Bank, supra.*) The respondent did not plead, by way of defense to appellant's action, that it had followed any general usage or custom in making the collection, or that any such usage or custom existed in the community where it had its place of business, or where the

collection was to be made. There is not a particle of evidence in the record that respondent followed any custom or that one exists. The court below made no finding on the subject. This court does not know, therefore, and cannot assume, that there is any such custom or usage as that relied on by the respondent. It was incumbent on the respondent to clearly establish that one existed, and that it was general (*Smith* v. *National Bank of D. O. Mills,* 191 Fed. 226, 231); and that it followed the usage in attempting to make the collection.

In order to bind the parties to the transaction the usage must not only be so general and well known in the community as to fasten an implied knowledge on the parties, if actual knowledge be denied (*Smith* v. *Bank of D. O. Mills, supra*), but it must be reasonable. (*Davis* v. *First Nat. Bank of Fresno, supra; Farley Nat. Bank* v. *Pollock,* 145 Ala. 321, 327 [117 Am. St. Rep. 44, 8 Ann. Cas. 370, 2 L. R. A. (N. S.) 194, 39 South. 612].) For instance, and somewhat in point, it has been held that any usage or custom which would tend to relieve a bank from liability in case it surrenders to the maker a draft given it for collection, and accepts in return the check of the maker, would be unreasonable, and could not be invoked as a justification for such course. (*National Bank of Commerce* v. *American Exch. Bank, supra,* at p. 332; *Whitney* v. *Esson,* 99 Mass. 308 [96 Am. Dec. 762].) But the effect of these decisions has not been argued on this appeal. Without full proof and a finding of the exact nature and extent of the usage relied on by respondent to defeat appellant's claim, this court cannot say the usage is or is not reasonable.

For the foregoing reasons, the judgment is reversed and the cause is remanded to the lower court for such further proceedings, in keeping with what is said in this opinion, as the parties may determine.

Lennon, J., Myers, J., Lawlor, J., Seawell, J., Richards, J., and Wilbur, C. J., concurred.