**SPENARD PLUMBING & HEATING CO.,**
Inc., Appellant,

v.

**F. G. WRIGHT, d/b/a Wright Construction
Company, Appellee.**

No. 109.

Supreme Court of Alaska.

April 10, 1962.

**520**

Peter B. Walton, of Connolly & Walton, Anchorage, for appellant.

Wendell P. Kay, Anchorage, for appellee.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

AREND, Justice.

This is an action brought by a contractor to recover money deposited by him, in lieu of a bid bond, with his offer to construct a building for the offeree. He claims that the offer required written notice to him of its acceptance and, since such notice was never given, he is entitled to the return of his deposit. From a judgment in favor of the contractor the offeree appeals.

It appears from the record that in the fall of 1952 the appellant corporation, Spenard Plumbing & Heating Co., Inc. (hereinafter referred to as Spenard), through its agent and architect, Edwin Crittenden, invited bids for the construction of a building to be known as the Martin Building in the City of Anchorage. The appellee F. G. Wright, doing business under the name of Wright Construction Company, submitted a bid on the form furnished by the appellant, offering to construct the building for $139,659 in accordance with architect's specifications. This transaction was ´ actually handled for Wright by his agent and business manager, George S. Morrison. Along

with the bid form, Morrison delivered to Crittenden for Spenard, Wright's certified check for $2,795 in lieu of a bid bond as security that Wright would enter into a written construction contract in the form specified by Spenard and furnish the necessary performance and payment bonds, should his bid be accepted.

The bids were opened at Crittenden's office on Friday, January 9, 1953, in the presence of Morrison, and Morrison was informed that Wright was the low bidder. This information was immediately passed on to Wright who was then in attendance at his Seattle office and did not arrive in Anchorage until late January or early February, 1953.

One of the paragraphs of the bid form specified as follows:

"If written notice of the acceptance of this bid is mailed, telegraphed, or delivered to the undersigned within 30 days after the date of opening of the bids, or any time thereafter before this bid is withdrawn, the undersigned will, within ten (10) days after the date of such mailing, telegraphing, or delivering of such notice, execute and deliver a contract in the form of agreement attached to the specification and give Performance and Payment Bonds in accordance with the specification and bid as accepted."

It is clear from the evidence of both of the parties that there was never any written notice given by Spenard, or anyone acting on its behalf, of the acceptance of the bid in question. However, there was testimony for Spenard to the effect that during the weekend following the opening of the bids Crittenden received authorization from Spenard to accept Wright's bid and also to grant him a total of forty days, instead of the ten days specified in the bid form, for furnishing the payment and performance bonds.[1] Then on Monday,

---

[1] It was Morrison who requested the additional time for Wright to furnish the payment and performance bonds. According to Morrison's story, Wright asked

him in the telephone conversation of January 9, to request the additional time for supplying the bonds as he had taxed his bonding capacity to the limit on other

January 12, Morrison went again to Crittenden's office and was told orally by Crittenden that Spenard had awarded the Martin Building job to Wright Construction Company and that Morrison should proceed to get the necessary bonds so that the construction contract could be executed. He also told Morrison that Spenard had agreed to allow Wright thirty additional days in which to furnish the bonds, that is, until February 22.

Other evidence in the record bearing upon a determination of this appeal is as follows: After January 12, Crittenden and Morrison conferred often to work out the details of the Martin Building job, and Crittenden continually pressed Morrison for the performance and payment bonds. Morrison stated in his deposition that, when Wright was unable to get the bonds in Seattle, he returned to Anchorage "to see what he could do to squirm out of the deal." He "practically instructed" Morrison to find some mistake in the bid so as to save the $2795 bid money from forfeiture.

On January 31, Wright Construction Company, over the signature of Morrison, sent the following letter to Crittenden:

"Re: Martin Building, Dear Sir: Personal and per verbal agreement, this is to state that the Wright Construction Co, will extend the acceptance date for the bid on the Martin Building to March 9, 1953."

About three weeks later, February 20, Spenard received a bid-letter from a Laurel Construction Company of Anchorage, offering to construct the Martin Building for a price higher than that bid by Wright, but lower than any of the other bids opened by Spenard on January 9.[2] This letter was signed by Danforth E. Apker "Construction Engineer." At the time, Apker was also an employee and structural engineer for Wright Construction Company. It appears that he and Morrison were the Laurel Construction Company and had formulated and submitted this new bid unbeknownst at the time to their employer Wright. Shortly before he received the bid of February 20, Crittenden knew that Morrison and Apker were working on it and intended to submit it. The bid was never accepted.

Crittenden believed that Spenard had given valid oral notice of the acceptance of Wright's bid and regarded February 22 as the terminal date for the furnishing of the payment and performance bonds by Wright in order for the latter to avoid a forfeiture of the bid deposit. When that day and several more passed and the bonds were not forthcoming, Crittenden, on March 5, wrote a letter to Wright Construction Company, stating that the certified check, given as a bid guarantee was forfeited because of the company's failure to fulfill the requirements of the bid.[3]

In the meantime Wright considered that Spenard had until March 9 to give him written notice of acceptance of his bid. On March 10, he telephoned Crittenden and told him that since the time for accepting

jobs and would need the extra time in which to complete some of those jobs and then his "bonding capacity would be in a better position." Wright denied that he had ever asked for such additional time, or that he had even tried to get payment and performance bonds for the Martin Building job or would have had any difficulty in getting the bonds if he had had a written acceptance of his bid from Spenard to show to the bonding company.

2. There were actually five bidders for the Martin Building job on January 9. The lowest of those bidders was Wright. The next lowest bidder offered to do the job for about $25,000 above Wright's price.

Laurel's bid of February 20 fell in between these two.

3. There is no copy of this letter in the record sent up but it was read into evidence at the trial, as follows:
"To Wright Construction Company, Gentlemen, this is to inform you that your inability to perform the requirements of your bid dated January 9, 1953, for construction of a store and office building in Anchorage, Alaska has caused forfeit of your bid guarantee. The guarantee was a certified check in the amount of $2,795.00. Sincerely yours, Edwin B. Crittenden."

the bid of Wright Construction Company had run out he desired the return of his company's bid deposit. This telephone conversation was confirmed by a letter dated March 14 from Wright to Crittenden.

Thereafter, on March 31, Crittenden answered Wright's letter of March 14, quoting in full the paragraph of the bid form regarding written acceptance,[4] and then continuing as follows:

"As has been discussed with both Mr. Wright and Mr. Morrison verbal acceptance of the bid of $139,659.00 was given on January 12 to Mr. George Morrison in this office. * * *

"It is the desire of the owners that Wright Construction [sic] enter into a contract with them for the construction of the Martin Building or that negotiations terminate. At their request I am, therefore, giving you notice that the bid was accepted as of January 12 and that compliance of [sic] the bid form that Wright Construction Company has ten days from this date to execute and deliver a contract in the form of the American Institute of Architect Standard Agreement and also furnish performance and payment bond in accordance with the specifications.

"If the contract is not entered into for the base bid figure and performance and payment bonds are not provided the bid guarantee in the amount of 2% [$2,795] of the base bid will be forfeited.

   \*    \*    \*    \*    \*    \*

"cc: Dr. Martin
    "Spenard Plumbing
    "McCarrey"

There was no response from Wright to this letter.

The case was tried to the court without a jury. From the evidence adduced the court made written findings of fact to the effect that, upon invitation of the appellant Spenard through its agent and architect

Crittenden, Wright Construction Company had on January 9, 1953, submitted a bid, on a "bid form" furnished and written by Spenard, offering to construct the Martin Building in accordance with the provisions of the bid form and at the same time delivered to Spenard a check for $2,795 in lieu of a bid bond; that one of the provisions of the bid form was the paragraph relating to written notice of acceptance of the bid, setting out that paragraph in full as it appears in the form and as we quoted it earlier in this opinion; that Spenard never made an adequate or sufficient acceptance of Wright's bid within the time allowed (This was Finding of Fact No. IV and will be referred to by that number hereafter.); that on March 14, 1953, Wright notified Spenard that the time for acceptance of the bid had expired and demanded the return of the check; and that on March 31 Spenard refused to return the check but cashed it and retained the proceeds.

The foregoing Findings of Fact are followed by certain "Conclusions of Law" as follows:

"1. That the defendant, [Spenard] having furnished the plaintiff [Wright] with a 'bid form', is bound by its provisions.

"2. That the defendant never gave the plaintiff the notice specified in the bid form required as a condition precedent to the plaintiff being required to execute and deliver a contract and give performance and payment bonds.

"3. That the plaintiff withdrew the bid before it was accepted.

"4. That the defendant had no lawful right to retain the check submitted by the plaintiff in lieu of a bid bond.

"5. That the plaintiff is lawfully entitled to recover the amount of the check."

Judgment for Wright was entered accordingly and this appeal is from that judgment.

4. This paragraph from the bid form is set forth earlier in the body of the opinion.

The appellant submits and we agree that there are only three issues raised by this case, namely:

1. Was a contract formed at all? (Spenard concedes that if the bid offer was never accepted, then it had no right to retain Wright's bid deposit.)

2. If a contract was formed, did it consist of a written offer contained wholly in the bid form and an oral acceptance thereof by appellant? (This proposition entails the premise that the requirement of a written acceptance had been waived by Wright.)

3. If a contract was formed, did it consist of an oral offer by Morrison as Wright's agent and an oral acceptance thereof by appellant through Crittenden?

We shall consider first the third issue thus presented. Spenard contends that the evidence required a finding by the trial court that the telephone request made by Morrison of Crittenden during the weekend of January 9–12 for a thirty-day extension of the ten-day limit in the written bid form for furnishing performance and payment bonds constituted a new oral offer. We do not so regard it. It was nothing more than a request for a modification of a single term of the written offer. There was nothing in the words or actions of either Morrison or Crittenden at any time to indicate that they regarded the written offer as having been rescinded by a substituted oral contract or offer. In fact Crittenden's testimony was all to the contrary as witness these statements:

"During one of the conversations with Mr. Morrison he stated that he felt that additional time would be required from the 10 days allowed him in the bid document to obtain the bonds and he wondered whether the owners would be willing to accept an extension of that time for 30 days and I said I

would investigate that with the owners;"

and again:

"Well yes, after a period that consisted of the *ten days allowed in the documents and the 30 days that had been requested and granted* were passed and I believe even a few days perhaps ten days after that, I wrote a letter to Wright Construction Company * * *." [Emphasis supplied.]

■ We hold that the only offer ever made by Wright to Spenard on the Martin job was the written offer contained in the bid form, as orally modified by the parties,[5] and that the trial court did not err in failing to find that a new oral offer had been made by Wright after he submitted his written offer. That being the case, there is no need to consider whether there was an oral acceptance of an oral offer.

■ In connection with the second issue presented the appellant maintains that the bid-form paragraph specifying that notice of acceptance be in writing, though ambiguous, does not require that the acceptance be in writing and at the most merely specifies one mode in which the bid may be accepted. For this proposition the appellant quotes Professor Corbin to the effect that an offeror can specify a mode of acceptance of his offer without making the method exclusive of all others.[6] We have no quarrel with such a rule of law, but it is not applicable here because the bid form does more than merely specify an acceptable method of acceptance. We regard it as prescribing the only method of acceptance. Even under the appellant's interpretation of the bid-form paragraph in question there is another legal principle which is operative here. That principle states that, while usage cannot change a rule of law, it may so affect the meaning of a contract that a rule of law

5. The appellant has not questioned the validity of the modification of the written agreement in this case by an oral agreement and therefore no such issue need be decided.

6. 1 Corbin, Contracts § 67, at 207 (1950).

which would be applicable in the absence of the usage becomes inapplicable.[7]

Wright testified that it is the general practice in the business of contracting for the construction of buildings that the contractor who submits a bid for such work always gets a written acceptance of his bid from the offeree. He explained this particular usage or practice in the trade as follows:

> "[W]hen you go to your bonding company you want that [the written acceptance of the bid] to say that that [the bid] has been awarded to you so that they can go in and find out whether that's actually a corporation or a partnership and what the financial background [sic] and so forth—otherwise you're liable to be ending [sic] a building up over here and not being able to pay your employes out of it. And you do, you always get it in writing before you submit it to your bondin g [sic] agent * * *."

■ The explanation thus given by Wright makes good business sense and we hold that the usage described by him is a reasonable one and did not contravene any principle of law.[8] Furthermore, Crittenden himself testified that on government jobs the bid award, that is, the acceptance of the offer, is in writing whereas on private jobs "20–25% of them [the bids] would not have been actually confirmed in writing because of the relationship between the contractors and the architect and the owner." We regard this testimony of Crittenden as an admission of the existence of the usage coupled with an attempt to establish that there was a waiver of the usage in this particular case.[9] We conclude that the usage and practice in the construction business in the Anchorage locality of requiring a bid acceptance to be in writing was as much a part of the written bid offer of Wright Construction Company as if it had been expressly set forth in that offer.[10]

■ We turn our attention next to the collateral argument of the appellant that, if the offer in this case be construed as prescribing one exclusive mode of acceptance, such requirement was in fact waived by the appellee Wright. The answer, as pointed out in appellee's brief, is simply that Morrison's authority to manage Wright's business and to enter into contracts incidental to the business did not authorize him to waive the contract requirement of written notice of acceptance. The reason for the rule in this case would be that the waiver of the requirement of written notice was not incidental to the making of the offer.[11]

■■ Professor Corbin defines an offer as "an expression by one party of his assent

---

7. 3 Williston, Contracts § 651 (rev. ed. 1936); Restatement, Contracts § 249 and Illus. 3 (1932).

8. The test of reasonableness as applied to usage is discussed by Williston, id. § 659. See also Davis v. First Nat. Bank of Fresno, 118 Cal. 600, 50 P. 666 (1897).

9. We note that even Morrison, whose testimony was submitted in deposition form only and who exhibited considerable prejudice and ill will against his employer, Mr. Wright, stated: "Well, frankly, if he [Crittenden] didn't notify us in writing, it is a definite surprise to me because at this late juncture, why, I would have almost sworn that we did receive written notification [of the bid award].

10. See Hostetter v. Park, 137 U.S. 30, 40, 11 S.Ct. 1, 4, 34 L.Ed. 568, 572 (1890); Correa v. Quality Motor Co., 118 Cal. App.2d 246, 257 P.2d 738, 741 (1953).

In the Hostetter case, the Supreme Court said: "It is well settled that parties who contract on a subject matter concerning which known usages prevail, incorporate such usages by implication into their agreements, if nothing is said to the contrary."

11. See Restatement (Second), Agency § 51 (1958), wherein it is stated under "Comment on Clause (b)": "Since such acts are not incidental to the making of a contract, it is not inferred that authorizing an agent to make a contract authorizes him to alter its terms; *to waive its conditions or otherwise to diminish or discharge the obligations of the third person.*" [Emphasis supplied.] See also Benema v. Union Central Life Ins. Co., 94 Mont. 138, 21 P.2d 69, 72 (1933); Craswell v. Biggs, 160 Or. 547, 86 P.2d 71, 76 (1938).

to certain definite terms, provided that the other party involved in the bargaining transaction will likewise express his assent to the identically same terms."[12] The making of the offer, he points out, "creates a power of acceptance in the offeree," and once the offer has been made there is nothing left for the offeror to do but to wait for the offeree to close the contract.[13] With those concepts in mind, we hold that Morrison had no more authority to waive the written acceptance requirement of the offer than he would have had to waive any of the terms or conditions of a closed contract such as might result from an accepted offer.

■ This brings us finally to the first issue raised by the appellant: Was there a contract formed at all in this case? We have already ruled that there was never any oral offer made by Wright, as claimed by the appellant, let alone the additional claim that such an oral offer embodied a provision for oral acceptance by the offeree. Furthermore, there was no authority in Wright's agent, Morrison, to waive the requirement in the written bid offer, supported by an established usage, that notice of acceptance of the offer had to be in writing. Appellant admits that it never gave any written notice of acceptance of the offer prior to the time that Wright gave

notice that time for acceptance of the bid had elapsed and demanded the return of his bid deposit. Such being the case, and in view of the evidence contained in the record and the law applicable thereto, we hold that the trial court was justified in finding "that the defendant [Spenard] never gave the plaintiff [Wright] the notice specified in the bid form" and that Wright withdrew the bid before it was accepted, and in concluding that Spenard never made an adequate or sufficient acceptance of Wright's bid within the time allowed or before the withdrawal of the offer and that Wright was entitled to recover the amount of his bid deposit.[14]

■ The findings of fact and conclusions of law entered by the trial court were neither artfully drawn nor in some instances properly labeled. For example, the first clause of finding No. IV, set forth in the margin,[15] is actually a conclusion of law and conclusions No. 2 and No. 3, also set forth in the margin,[16] are ultimate findings of fact.[17] We have several times emphasized the necessity for compliance with that provision of Civ.R. 52 which requires that, in all cases tried by the court without a jury, the court shall find the facts specially and state separately its conclusions of law thereon.[18] But we have also stated that the findings need only be sufficient to indicate

12. 1 Corbin, Contracts § 11, at 21 (1950).

13. Id., at 21–22.

14. The trial judge has mislabeled some of his findings of fact as conclusions of law.

15. Finding of Fact No. IV in the first clause thereof states: "The defendant never made an adequate or sufficient acceptance of the bid of the plaintiff within the time allowed * * *."

16. Conclusions of Law, Nos. 2 and 3 read as follows:
"2. That the defendant [Spenard] never gave the plaintiff [Wright] the notice specified in the bid form required as a condition precedent to the plaintiff being required to execute and deliver a contract and give performance and payment bonds.

"3. That the plaintiff withdrew the bid before it was accepted."

17. In patent cases, the federal courts have regarded it as error to designate findings on patentability as conclusions of law, but not such error as to call for reversal and remand if the error was a formal one and did the appellant no harm. Minnesota Mining & Mfg. Co. v. Coe, 75 U.S.App.D.C. 131, 125 F.2d 198 (1941). And in Smith v. Fletcher, 80 U.S.App.D.C. 263, 152 F.2d 20 (1945), a suit between attorneys for a division of fee, the court held that, though the trial court erroneously called a finding of fact a conclusion of law, that circumstance did not require reversal of the judgment for it did not prevent the appellate court from understanding the basis and theory of the judgment.

18. Dickerson v. Geiermann, No. 60, 368 P.2d 217 (Alaska 1962) ; Merrill v. Mer-

the factual basis for the ultimate conclusion.[19]

The appellant complains that the findings nowhere state that the bid form required written acceptance and indicates that it would have been satisfied if finding No. IV had merely stated:

"The appellant never gave the appellee written acceptance of the bid-form offer."

It is true that the trial judge made no specific finding that there was no *written* acceptance of the offer. But the record clearly indicates that he considered the matter in his decision, as evidenced by the following colloquy between court and counsel at the conclusion of the trial:

"MR. WALTON: It was not accepted. May I inquire then in order that we may set it forth in the Findings of Fact what, wherein was it not accepted, that is why wasn't it accepted?

"THE COURT: Because ah, the provisions in the bid bond furnished by the contractor himself was that notice should be in writing and there's no evidence to that effect here.

"MR. WALTON: In other words Your Court, Your Honor makes a finding that, according to this bid bond it was required that notice be in writing.

"THE COURT: Yes, that's my interpretation of it. It could b [sic] in error but that's the way I construe it.

"MR. WALTON: Thankyou [sic]. And the contract was not formed because written acceptance was not furnished?

"THE COURT: Yes.

"MR. WALTON: Yes. And because ah, the contract was not formed ah, the plaintiff has a right to the return of his money?

"THE COURT: Yes."

 While an express finding on the point in question might well have been made, omission to make it was not reversible error. The findings and conclusions as made and entered below were sufficient to give us a clear understanding of the basis of the decision. They were likewise sufficient to sustain the judgment of the trial court; and there was substantial evidence in the record to support them.

Finding no error, we affirm the judgment.[20]

---

rill, No. 62, 368 P.2d 546 (Alaska 1962); Rogge v. Weaver, No. 63, 368 P.2d 810 (Alaska, Feb. 6, 1962).

19. Merrill v. Merrill, supra note 18, 368 P.2d at 548 n. 10.

20. In the light of our decision we consider it unnecessary to resolve other issues raised by the appellant, some of which were not even briefed.