**STOCK & GROVE, INCORPORATED,**
Appellant,

v.

**CITY OF JUNEAU, a Municipal
Corporation, Appellee.**

No. 535.

Supreme Court of Alaska.

June 21, 1965.

Donald L. Craddick, Faulkner, Banfield, Boochever & Doogan, Juneau, for appellant.

Shirley F. Meuwissen, Stabler, Gregg & Meuwissen, Juneau, for appellee.

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

NESBETT, Chief Justice.

The suit below was for additional payment for work done under a construction contract for the laying of sewer lines in the City of Juneau, Alaska. At the close of the testimony of plaintiff-appellant's first witness the trial judge granted defendant-appellee's motion to dismiss the first thirteen paragraphs of the complaint. Only paragraph fourteen, stating a claim not pertinent to this appeal remained to be tried "after" dismissal.

Appellant presents two questions for decision:

(1) Did the trial judge err in dismissing paragraphs 1–13 of the complaint without permitting plaintiff to present its other. witnesses?

(2) Were the findings of fact and conclusions of law entered by the court suf-

ficiently detailed and explicit to satisfy the requirements of Civil Rule 52(a)?[1]

In paragraphs 1 through 13 of its complaint appellant claimed reimbursement for unpaid balances due it for additional work performed under its contract as follows:

(1) For backfilling and mechanically tamping 816.8 cubic yards of earth in the amount of $4,900.80.

(2) For removing and replacing 248.76 square yards of concrete pavement in the amount of $7,462.80.

(3) For removing and replacing 16.72 square yards of bituminous surfacing in the amount of $501.60.

(4) For removing and replacing 2,289.7 vertical square feet of rubble rock, also known as Rip-Rap, in the amount of $9,158.80.

In its answer appellee denied that any of the above work was done pursuant to the requirements of the contract; alleged in an affirmative defense that payment in full had been made for all work done pursuant to the contract and in a second affirmative defense alleged that appellant was estopped from making any claim because of any misunderstanding it might have had in reading the contract documents prior to submitting its bid.

It is clear from the record that appellant's unpaid claims were based on the backfilling, tamping and replacement of paving required because of sewer trench excavations which exceeded 2′ 3″ in width. Appellant's interpretation of sections 2–06 and 2–06(a) of the contract specifications, which stated:

2–06. TRENCH EXCAVATION, to lines and grades shown on the drawings, banks vertical from bottom of trench to at least 18 inches above top of pipe, width of trenches to be 2 feet —3 inches. * * *

*a. Unclassified Excavation.* Unless otherwise designated, all trench excavation will be considered to be unclassified. Additional payment will be allowed for rock excavation. The material known locally as "blue clay" and similar conglomerates are not classified as rock.

was that the width of trenches was to be 2′ 3″ from the bottom of the trench to a point 18″ above the top of the pipe, but from that point upward to the top, the trench sides could be sloped in accordance with standard construction practice, the degree of slope being determined by the type of earth material encountered and the amount of sluffing.

Appellee's interpretation of the above quoted specifications seems to have been that trench width, at least for the purpose of computing compensation, was to be limited to 2′ 3″.

Trench widths greater than 2′ 3″ at and near the top of the trench which required more backfilling, tamping and replacement of surface pavement than had been estimated by appellee accounted for the additional amounts demanded by appellant.

Appellant's first and only witness was R. D. Stock, president of appellant corporation. His testimony, insofar as is pertinent to the issues before us was: that he prepared the bid which resulted in the award of the contract to appellant; that the only area of the specifications that troubled him in preparing the bid was section 6–13 defining the method of measuring rip-rap; that he did not attempt to obtain an interpretation of that section from the project engineers before submitting a bid; that his interpretation of sections 2–06 and 2–06 (a)[2] was that the trench excavation was to be 2′ 3″ in width at the bottom and upward to a point 18″ above the sewer pipe and from that point upward to the top of the

---

1. Civ.R. 52(a) in pertinent part states: In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment * * *.

2. Quoted supra this page.

trench, although the excavation sides were to be vertical as possible, it was nevertheless permissible for the sides to slope outward because of sluffing; [3] that his interpretation of section 6–04 of the specifications, which stated:

6–04. ADDITIONAL FOR MECHANICAL TAMPING.

a. *Measurement* will be by the cubic yard by the method of average end areas measured from the surface of the ground to a plane one foot above the top of the pipe and for the width of the trench specified in areas where mechanical tamping is called for on the drawings.

b. *Payment* will be made at the unit price bid per cubic yard for "Additional for Mechanical Tamping" completed and accepted. No additional payment will be made for mechanical tamping which may be required to obtain specified soil density under sewer encasements or other areas not noted on the drawings.

was that payment would be made based on a trench cross section at the top which involved sloping sides; that his interpretation of section 5–07 of the specifications which stated:

5–07. REMOVAL AND REPLACEMENT OF CONCRETE PAVEMENT. Remove concrete pavement to the allowable width of the trench. Compact and backfill as outlined in the section of these specifications entitled EXCAVATION, TRENCHING AND BACKFILLING. After approval of the backfill by the Engineer, cut back the pavement for an additional 18-inches sawing the break back joint for a depth of at least 2-inches before making the break. Replace the pavement for this width with Class A,

Grade X concrete for the thickness equal to the original thickness of the pavement cut plus two inches. Construct concrete curbs to the section and with a finish to match the existing curb. Concrete shall be made with Type III, High Early Strength, cement. Replacement of concrete curbs shall be considered as incidental to pavement removal and replacement.

was that concrete pavement would be removed to whatever extent was necessary to dig the trench, keeping the trench as narrow as possible, but that payment would be based on the amount actually removed and replaced; that his interpretation of section 5–09 dealing with the removal and replacement of bituminous surfacing, the first sentence of which stated:

Where the pipeline is constructed in or across travelways with bituminous surfacing, the existing bituminous surface with base shall be removed to the same width as the allowable width of the trench.

was that appellant would be paid for the replacement of all bituminous surfacing that it had been necessary to remove in order to dig the trench. Mr. Stock gave testimony of a similar nature with respect to work done which was governed by other provisions of the contract. He testified that several different interpretations of the specification concerning removal of riprap had been given by engineers of appellee, the latest interpretation not being compatible with reason according to the witness, and that it was customary in the construction business for trench excavations to have sloping sides to avoid the danger to workmen from sluffing. On cross-examination Mr. Stock testified that he had not, prior to submitting his bid, requested an interpretation of any of the contract

3. At this point the witness was using a blackboard diagram to illustrate his testimony. It would have been helpful to a clearer understanding of a transcript of the testimony if counsel for appellant, or the trial judge, had described the diagram for the record and on those occasions when the witness pointed or referred to the diagram, to have stated into the record an explanation sufficient to acquaint a reader of the transcript with the full import of the testimony.

provisions in accordance with page IB-3, section 9 of the contract, which stated:

9. If any person who contemplates submitting a bid for this Contract is in doubt as to the true meaning of any part of the plans, specifications, or other proposed Contract Documents, he may submit to the Engineers a written request for an interpretation thereof. The person submitting the request will be responsible for its prompt delivery. Any interpretation of the proposed documents will be made only by Addendum duly issued and a copy of such Addendum will be mailed or delivered to each person receiving a set of such documents. The Owner and/or Engineers will not be responsible for any other explanations or interpretations of the proposed documents.

At the request of counsel for appellee, the witness read certain provisions of the contract, one of which was a certification that the bidder had carefully examined the drawings, specifications and other contract documents, had investigated the location, character and extent of the work to be done, that he was familiar with the type of work to be done and that he proposed to perform the contract requirements for the prices listed in the unit price schedule. The witness admitted that the contract plans furnished to bidders contained estimates of the amounts involved with respect to each of the items for which additional payment was being requested and that he had not checked the accuracy of these estimates prior to bidding. He testified that in many instances it was not possible to do this because of lack of information, admitting again that he had certified that he had examined the plans and specifications, was familiar with the work and that he would do it according to the plans and specifications. On redirect Mr. Stock testified that the work was bid on the basis of unit prices and not on lump sums; that if the bidding had been on the basis of lump sums it would have been necessary to prepare takeoffs or estimates of the total amounts involved; that he did not think it would have been possible to have excavated and ended up with a trench 2′ 3″ in width "all the way through" unless he had used drive sheeting which must be driven before the excavation, is extremely expensive and was not called for in the contract by implication or otherwise.

When court reconvened after the noon recess the judge stated:

At the commencement of the trial this morning, defense counsel moved to dismiss the complaint for the reason that it does not state a claim upon which relief can be granted. Court has taken that motion under advisement pending certain testimony on behalf of the plaintiff. Although the complaint may have been subject to such a motion prior to time of trial, it was not made. For that reason the Court did take it under advisement pending certain evidence which was to be presented by the plaintiffs herein. I find, based upon the law and the facts from the testimony, that it is necessary to grant the motion to dismiss as to plaintiff's complaint, paragraphs number 1 through 13. This is based upon the contents of the complaint itself, and secondly upon the defendant's second affirmative defense, and most, especially, upon the testimony of R. D. Stock and I cannot find, in the light of the complaint, the testimony and the law concerning these matters as I am able to find it, that in the light of that testimony this plaintiff could prevail on the first 13 paragraphs. It is further noted, although perhaps not compelling, that the complaint is difficult in that it does not set forth its separate claims as to counts as is required, although this may not be, in itself, grounds for dismissal for failure to state a claim, it is noteworthy at least for counsel's information in preparing such matters in the future.

The only finding of fact made by the court pertinent to this appeal was I (3) which stated:

The testimony of R. D. Stock showed the plaintiff had no right to relief under the Complaint, paragraphs 1 through 13.

The only conclusion of law entered which is pertinent to this appeal is No. I which stated:

Defendant is entitled to a Judgment of Dismissal of paragraphs 1 through 13 of the Complaint for failure to state a claim upon which relief can be granted considering the following:

(1) The contents of the Complaint;

(2) the defendant's second affirmative defense; and

(3) most especially, the testimony of R. D. Stock.

In our opinion thhe court erred in granting dismissal under the circumstances.

Plaintiff's theory of the case was that the contract provisions, with one possible exception, were not ambiguous, but should have been interpreted in the light of what was standard practice in the construction industry. Specifically, his theory was that the specification on trench excavation width only limited trench width to 2' 3" for compensation purposes from the bottom of the trench to a point 18" above the sewer pipe. From that point upward to the top of the trench, the specification should be interpreted as allowing for a sloping outward of the trench sides. R. D. Stock was qualified as an expert in construction practices and testified that the top portion of an excavation always sluffs, or caves, and that it is standard construction practice to slope the sides outward as a safety measure to protect workmen in the trench. Counsel for appellant had informed the court during Mr. Stock's testimony that an engineer witness would be called to testify in detail with respect to the sloping trench sides.

Counsel for appellee in her opening statement and thereafter seems to have ignored appellant's theory of the case and emphasized the view that in order to prevail appellant would need to prove that the contract was ambiguous and therefore needed to be interpreted; that no allegation of ambiguity was contained in the complaint; that no recognized theory of the case had been set out in the complaint and moved that it be dismissed for failure to state a claim. During cross-examination counsel for appellee's questions generally were framed to obtain answers which emphasized the fact that Mr. Stock had certified that he had examined the plans and specifications, was familiar with the work and would perform it according to the specifications and that he had not checked the accuracy of the estimates furnished by appellee on the plans as to the amounts involved with respect to the items for which additional payment was demanded.

The views of this court can perhaps best be explained by making specific observations on the various reasons given by the trial court for dismissing the complaint.

(1) Appellant's complaint was not defective or inartfully drawn, in fact, it was carefully and artfully drawn. After pleading the contract, performance by appellant, acceptance by appellee and what it claimed to be a tender of part payment by appellee, appellant then set out in separate numbered paragraphs, with respect to each item for which additional compensation was claimed, the following:

(a) That a certain amount of work was performed *under pertinent terms of the contract,* each pertinent term being pleaded as a separate exhibit;

(b) That appellant had received payment for a specific portion of the work performed;

(c) That its claim for payment of the balance of its claim had been rejected.

(2) Appellant did not plead that any of the terms of the contract specifications were ambiguous or misunderstood by appellant prior to submitting its bid. Appellant made this clear in its opening statement and out-

lined the legal theory upon which it was proceeding when its counsel stated:

MR. CRADDICK: May it please the Court, the complaint we feel is quite fair. It sets forth all the applicable contract provisions and it states that the work was done under those contract provisions. The provisions are not ambiguous to us, they have a clear meaning. The reason that we are in Court is because the defendant happens to disagree with what is our interpretation of the contract. Now, we shall show through witnesses, that this disagreement was not brought home to the plaintiff, until after the work was done. Now, when you have a contract, it is to be interpreted on the basis of the meaning that the contract would actually convey to a reasonably intelligent bidder acquainted both with the industry practice and the surrounding circumstances, and that, of course, is the reason we are in Court today. It is obvious that any person could come in Court and say that I read the contract and interpreted as being so, well, that may be, but it would have to be a reasonable interpretation and that, of course, is why we have our expert witness here to show that our interpretation of the contract is indeed a reasonable one. We agree the ambiguity here, if anything, is slight. The contract terms are quite clear. What we are going to do is show that the contract terms mean what they say— what we say they mean, not what the city says they mean.

■ That the clear and unambiguous terms of a contract may be interpreted by the general and accepted usage of the trade or business involved is the general rule of law.[4] Appellant was attempting to prove,

as it was obligated to prove, what it contended was the accepted practice in the construction industry with respect to the sloping of the sides of trench excavations. Mr. Stock's testimony as an expert was relevant, and if believed, supported appellant's theory of the case.

(3) A study of the entire transcript of testimony with relation to appellee's second affirmative defense of estoppel fails to disclose a sound basis for the trial court's conclusion that the testimony of Mr. Stock had established that defense or had disproved his own theory of recovery.

The testimony tended to support appellant's theory of recovery and, to a degree, may have provided support for appellee's affirmative defense of estoppel, at least with respect to the claim for removal and replacement of rubble rock.

■ We express no opinion on the merits of the issues. Dismissal was premature. Under the circumstances appellant should have been permitted to complete the presentation of his case before consideration was given to a motion to dismiss.[5]

■■ We also agree with appellant that the findings of fact and conclusions of law were not adequate to satisfy the requirements of Civil Rule 52(a). It is not possible to determine with any certainty what facts were found by the court and as a result the conclusion of law serves no helpful purpose.

In Dickerson v. Geiermann[6] we said 368 P.2d at page 219:

It is the duty of a trial court to deal adequately with and state with clarity what it finds as facts and what it holds as conclusions of law. The findings and conclusions should be so explicit as to give this court a clear under-

4. Spenard Plumbing & Heating Co. v. Wright, 370 P.2d 519, 523–24 (Alaska 1962); 5 Williston, Contracts § 648 (3d ed. 1961) and case authority there cited.

5. Civ.R. 41(b); See Trusty v. Jones, 369 P.2d 420 (Alaska 1962); Rogge v. Weaver, 368 P.2d 810 (Alaska 1962).

6. 368 P.2d 217 (Alaska 1962); Hamilton v. Lotto, 391 P.2d 948, 949 (Alaska 1964).

standing of the basis for the decision made. [Footnotes omitted.]

The judgment below is reversed and the case remanded for further proceedings consistent with the views expressed herein.

RABINOWITZ, Justice (concurring).

I concur in the reversal of the lower court's dismissal but do so on somewhat different grounds than those set forth in this court's opinion.

The record is obscure as to the precise basis for the lower court's entry of a judgment of dismissal. At the time the lower court granted the dismissal as to the first thirteen paragraphs of plaintiff's complaint, the sole motion before the court was defendant's motion to dismiss the complaint for failure to state a claim.[1]

I construe the trial court's action as granting both a Rule 12(b) motion to dismiss the complaint for failure to state a claim and a Rule 41(b) dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief.[2] Whether the trial court's action is viewed as the granting of a Rule 12(b) motion, or as the granting of a Rule 41(b) motion, or as the granting of both, I am of the opinion that error was committed.

The thirteen paragraphs of the complaint in question clearly state claims upon which relief can be granted and, therefore, were not subject to dismissal under Rule 12(b).

The record fails to disclose any basis for the grant of a Rule 41(b) involuntary dismissal. Although the lower court failed to articulate with any degree of clarity the basis for the dismissal, findings of fact and conclusions of law were filed. Under the provisions of Rule 52, findings are not required in regards to any motion excepting one made pursuant to Rule 41(b).[3] It, therefore, appears that the trial court also acted pursuant to Rule 41(b) in granting the dismissal. In regards to the finding of fact and conclusion of law (set forth in this court's opinion) which were ostensibly filed in conformity with Rule 41(b), I am of the opinion that there is no support in the record for the same and, therefore, they are erroneous and should be set aside.[4]

1. After appellant's counsel completed his opening statement, appellee moved to dismiss the complaint for failure to state a claim. The motion was then taken under advisement. After plaintiff's first witness had completed his testimony, the court granted defendant's motion to dismiss as to the first thirteen paragraphs of plaintiff's complaint leaving one remaining paragraph (count) to be further litigated.

2. Civil Rule 12(b) provides in part:
Every defense, in law or fact, to a claim for relief in any pleading * * * shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: * * * (6) failure to state a claim upon which relief can be granted * * *.
Civil Rule 12(h) permits a 12(b) (6) motion to be made at any time.
Civil Rule 41(b) provides in part:
After the plaintiff has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. In an action tried by the court without a jury the court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a).

3. Civil Rule 52(a) provides in part:
Findings of fact and conclusions of law are unnecessary on decisions of motions under Rule 12 or 56 or any other motion except as provided in Rule 41 (b).

4. Additionally under the facts as disclosed by the record, I am of the opinion that the grant of a Rule 41(b) motion was premature. Rule 41(b) is limited by its terms to that posture of the trial when plaintiff has completed "the presentation of his evidence."