**URBAN DEVELOPMENT COMPANY,**
Appellant,

v.

Joseph J. M. DEKREON, Appellee.

No. 2028.

Supreme Court of Alaska.

Sept. 13, 1974.

John R. Strachan, Robison, McCaskey, Strachan & Hoge, Anchorage, for appellant.

Warren C. Colver, Anchorage, for appellee.

Before RABINOWITZ, C. J., and CONNOR, ERWIN, BOOCHEVER and FITZGERALD, JJ.

## OPINION

CONNOR, Justice.

This is an appeal from a judgment ordering foreclosure of a lien for services rendered in the improvement of real property. Appellant asserts error in: (1) the interpretation of an agreement on which part of appellee's claim in the foreclosure action was based; (2) the computation of the value of appellee's lien; (3) the failure of the trial court to make adequate findings of fact and conclusions of law; and (4) the procedure by which attorney's fees were awarded.

In May and June of 1971, appellant Urban Development entered into two earnest money agreements with S. G. Heflin to sell to Heflin 22 lots in the Dimond Birch Subdivision near Anchorage, Alaska. This property is the subject of this suit.

In June 1971, appellee Dekreon entered into a written agreement with Heflin under which Dekreon was to supervise construction on these lots. This agreement provided that Dekreon and Heflin were to share equally the profit and loss on each job. Dekreon was to be paid "a draw of 1,000 per month, the draw to be considered as an advance against [his] anticipated share of profits." If no profits were realized on a particular project, the agreement provided that " . . . the portions of [Dekreon's] draw advanced for such job may be withheld by [Heflin] from the next job on which there is profit."

Dekreon began working on the Dimond Birch project in August 28, 1971. He testified that the duties he performed included supervising the construction work, obtaining bids, arranging for subcontractors, accounting, and general coordination of the construction project. Thomas McKeever, secretary-treasurer of Urban Development, Inc., visited the Dimond Birch Subdivision at least occasionally and knew that Dekreon was working on the property.

The agreement between Dekreon and Heflin was rescinded orally in late November of 1971 and in writing on January 28, 1972. These parties then orally reached another agreement under which Dekreon was to be paid $9 per hour on a 60-hour a week basis. It is unclear from the testimony whether this rate was intended to be retroactive to the date he began work on the Dimond Birch project or whether it was to apply only to work done after the termination of the written agreement in November. There is no indication in the record that Dekreon's duties changed because of the new agreement.

Dekreon testified that he worked 640 hours from August through November 1971, and that he worked an additional 51½ hours from November 1971 through the spring of 1972. The testimony is in conflict as to whether Dekreon ever received any money for his work on the Dimond Birch project. It is uncontested that there were no profits on that project.

In August 1972, the contract between Heflin and Urban Development for the sale of the Dimond Birch properties was terminated.

On August 23, 1972, Dekreon filed a claim of lien against twenty-two lots located in the Dimond Birch Subdivision. On October 18, 1972, suit was filed to fore-

close the claim of lien. Trial was held before the superior court on May 1–2, 1973. On May 2, a minute order was entered rendering an oral decision in favor of the plaintiff for $4,463.50. This amount was based on the $1,000 per month draw provided for in the June 1971 agreement between Heflin and Dekreon for services performed from August to November 1971 and, apparently, on the $9 per hour rate agreed upon by Heflin and Dekreon for services performed after the rescission of the written agreement.[1]

Appellee was asked to submit written findings of fact and conclusions of law to the court. This was apparently done [they do not appear on the record on appeal] but appellant objected to these submissions.

A hearing was scheduled for June 6 on the objections to these submissions. On June 4, 1973, however the court decided to adopt its oral decision of May 2 as its findings of fact and conclusions of law.

The question of attorney's fees was left open in the June 4 proceedings. At some point, however, the sum of $1,070.34 for attorney's fees was entered in the June 4 judgment. Costs of $85.53 were also awarded to appellee.

Appellant first asserts that appellee is not entitled to foreclose a labor lien on appellant's land becuase of the agreement he had with Heflin. By this agreement, appellee and Heflin became either partners or joint venturers, and agreed that appellee would get a monthly draw as an advance against future profits. There were no profits. Thus, it is argued, there could be no valid lien because he was owed no money.

It is important to point out that, for the purposes of AS 34.35.050,[2] the agreement establishing a partnership or joint ventureship does not affect appellee's standing to file a lien against appellant's land. It is uncontested that Dekreon worked on the Dimond Birch Subdivision and that Mr. McKeever, secretary-treasurer of Urban Development, knew that he was doing so. Thus, the real issue presented by appellant's argument concerns the interpretation of the agreement.

This agreement permits conflicting interpretations as to whether appellee was entitled to the amount of the draw if there were no profits on the Dimond Birch project. The trial court found that there were no profits on the project. Nevertheless, it decided that Dekreon was entitled to the amount of the draw for four months of services. No finding was made to explain this conclusion. If the court decided that Dekreon was entitled to the amount of the draw in the absence of profits on this particular project on the basis of the wording of the agreement, the subsequent conduct of the parties, or both, such a finding should have been made.

Moreover, the evidence does not support an award based on *four* months of services performed under this agreement. Dekreon, by his own testimony, did not devote his time to the Dimond Birch project until August 28. The court found that the agreement was terminated "sometime around the end of November". Thus, Dekreon worked, at most, only slightly over *three* months on this project under the agreement which provided for a $1,000 monthly draw.

---

1. No specific finding was made by the court that the rate to which he was entitled was $9 per hour. This rate, however, is uncontested in the testimony, and it is clear from the court's finding that Dekreon worked 51½ hours and its conclusion that he was entitled to $463.50 for work during this period, that the court accepted this testimony.

2. Sec. 34.35.050 provides:
"*Lien for work done or materials furnished.* A person or firm, contractor, . . . or other person performing design or supervision services or performing labor upon or preliminary to the construction of . . . a building . . . including the clearing, grading, draining, excavating or landscaping of the ground upon which it is constructed . . . has a lien on it for the work done or material furnished at the instance of the owner of the building or other improvement, or his agent."

In addition to the dispute over the interpretation of the agreement, appellant contends that appellee was not entitled to a lien on the Dimond Birch property for the full value of his services during this period because some of his time was spent on subdivisions other than Dimond Birch. The evidence on this question is in conflict. While there is testimony that some of Dekreon's services were performed on other projects, there is some evidence that Dekreon had worked substantially only at Dimond Birch during the time period in question. Again, the trial court made no finding resolving the conflict.

There is no indication in the record that the court considered the question of Dekreon's work on other projects. See Spenard Plumbing & Heating Co. v. Wright, 370 P.2d 519, 525 (Alaska 1962). It is unclear to us whether the court rejected the rather substantial testimony that Dekreon worked on other projects during this period, or whether it concluded that he was entitled to the lien on Dimond Birch for the full value of his services despite the fact that much of his time was spent on other work sites.

■ The requirement of Civil Rule 52(a) [3] that specific findings of fact and conclusions of law be made by the trial court is intended to facilitate the work of both the trial judge and the appellate court.

" . . . [T]he requirement that the trial judge file findings of fact gives assurance that he has exercised care in ascertaining the facts, and has employed both skill and judgment in reducing his thoughts on contested matters to precise and pertinent findings while the evidence

is still fresh in his mind. [Note omitted] Further, under Rule 52(a), it is the duty of the trial court by sufficiently detailed and explicit findings 'to give the appellate court a clear understanding of the basis of the trial court's decision, and to enable it to determine the ground on which the trial court reached its decision.' [Note omitted]" [4]

■ Where the basis on which the court reached a certain conclusion is not clear, it is not enough that the appellate court is able to derive bases on which the trial court could have permissibly reached the decision it did from the record. See, Graham v. Rockman, 504 P.2d 1351 (Alaska 1972). It must be clear how the court actually did arrive at its conclusions. Otherwise, there is no assurance that the court itself thought out each issue, and an appellate court cannot effectively review the decision-making process of the trial court. Therefore, we must reverse and remand this case so that the necessary additional findings can be made.

■■ This court finds no error in the adoption by the trial court of its oral decision of May 2 as its findings of fact and conclusions of law. Under our decisions, Rule 52(a) does not invariably require that the findings and conclusions be properly labeled, or even that express findings be made on all questions, so long as the record clearly indicates that the court considered the matter and resolved each critical factual dispute. Spenard Plumbing & Heating Co. v. Wright, supra.

■ We also find no error in the trial court's failure to hold a hearing on appellant's objections to appellee's proposed findings and conclusions. Civil Rule 78(b)

---

3. Rule 52(a) reads in pertinent part:
"*Effect.* In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specifically and state separately its conclusions of law thereon and direct the entry of the appropriate judgment . . . ."

4. This requirement also aids in the application of the principles of res judicata and es-

toppel by judgment, 5A Moore, Federal Practice, 52.06 [1], at 2706 (2d ed. 1974), and enables the defeated party to determine whether the case presents a question worthy of consideration by the appellate court. Rogge v. Weaver, 368 P.2d 810, 814 n. 7 (Alaska 1962).

contemplates that such a hearing is discretionary. This rule reads in pertinent part:

"*Objections*. . . . If objections are served within the time specified herein, the court *may* thereafter require the attorneys interested to appear before it, or it may sign the document as prepared by counsel for the successful party or as modified by the court. [Emphasis added]"

■ Although the remaining issue concerning the award of attorney's fees is affected by our decision to reverse and remand this case for an additional finding, we feel it appropriate to respond to appellant's contention that the trial court erred in awarding attorney's fees to appellee without a motion by appellee and an opportunity by appellant to be heard. Under Civil Rule 82(a),[5] a trial judge may award attorney's fees without a formal motion by appellee and without a hearing. This is true particularly in a situation such as this one, where the party seeking to be heard did not file a formal request.[6]

Reversed and remanded.

---

**5.** Rule 82. Attorney's Fees.

(a) Allowance to Prevailing Party as Costs.

(1) Unless the court, in its discretion, otherwise directs, the following schedule of attorney's fees will be adhered to in fixing such fees for the party recovering any money judgment therein, as part of the costs of the action allowed by law:

*Attorney's Fees In Average Cases*

|       |          | Contested | Without Trial | Non-Contested |
|-------|----------|-----------|---------------|---------------|
| First | $ 2,000  | 25%       | 20%           | 15%           |
| Next  | $ 3,000  | 20%       | 15%           | 12.5%         |
| Next  | $ 5,000  | 15%       | 12.5%         | 10%           |
| Over  | $10,000  | 10%       | 7.5%          | 5%            |

. . . .

(3) The allowance of attorney's fees by the court in conformance with the foregoing schedule is not to be construed as fixing the fees between attorney and client.

---

**6.** At the close of trial appellant's counsel requested the right to be heard on the matter of attorney's fees. The court postponed the entry of judgment in order to give appellant's counsel time to cite authorities in support of his position. When no response from counsel was forthcoming, the need for a hearing was obviated.