**NOTICE**

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

## THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| ALANA M., ) | |
| ) | Supreme Court No. S-19209 |
| Appellant, ) | |
| ) | Superior Court Nos. 4FA-22-00023/00024/ |
| v. ) | 00025/00026 CN (Consolidated) |
| ) | |
| STATE OF ALASKA, DEPARTMENT ) | <u>MEMORANDUM OPINION</u> |
| OF FAMILY & COMMUNITY ) | <u>AND JUDGMENT</u>* |
| SERVICES, OFFICE OF CHILDREN'S ) | |
| SERVICES, ) | No. 2103 – August 27, 2025 |
| ) | |
| Appellee. ) | |
| ) | |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Kirk Schwalm, Judge.

Appearances: Michael L. Horowitz, Law Office of Michael Horowitz, Kingsley, Michigan, for Appellant. David A. Wilkinson, Senior Assistant Attorney General, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for Appellee.

Before: Carney, Chief Justice, and Borghesan, Henderson, Pate, and Oravec, Justices.

## I. INTRODUCTION

A mother appeals an order terminating her parental rights to four children due to physical harm, mental injury, and neglect. She argues that one of the superior

---

\*      Entered under Alaska Appellate Rule 214.

court's findings — that she failed to remedy the conduct that caused her children to be in need of aid — is not detailed enough to permit meaningful appellate review. We disagree. The superior court made various findings throughout the termination order that adequately explain its failure-to-remedy finding. And seeing no error in the finding itself, we affirm.

## II.     FACTS AND PROCEEDINGS

### A.     Facts

Alana and Lucien lived together in North Pole with their four children — Cal, Hank, Gregor, and Ellie — and Linus, Lucien's son from a previous relationship.[1] In March 2022 Lucien reported to the Office of Children's Services (OCS) that Linus was being physically abused and neglected and that the four younger children were neglected due to conditions in the family home.

An investigation revealed that Alana and Lucien regularly tied Linus, ten years old at the time, to a metal rolling cart for long periods of time while binding his mouth and hands with duct tape. A photograph from February 2022 showed Linus tied up, standing in his own urine, and covered in goosebumps.

Alana and Lucien were arrested and charged with felony crimes including kidnapping and assault. OCS sought temporary custody of all five children.

### B.     Proceedings

In May 2023 Alana and Lucien stipulated to the adjudication of the four younger children as in need of aid. The court adopted the stipulation the following month, and the children were placed in OCS custody.

In August 2023 OCS petitioned to terminate Alana and Lucien's parental rights to the four younger children.[2] OCS alleged that the children risked substantial

---

[1]     We use pseudonyms to protect the family's privacy.

[2]     Linus was placed with his paternal grandmother. Permanency proceedings in his case are ongoing.

physical harm, mental injury, and neglect due to repeated exposure to Linus's abuse and the conditions of the home.

A termination trial took place in March 2024. An OCS caseworker testified about efforts OCS made to reunite Alana with her children. The caseworker testified about creating a case plan for Alana while she was in jail due to her criminal charges. The case plan recommended that, upon release, Alana engage in a domestic violence assessment and follow all recommendations; obtain a psychological evaluation and follow recommendations; and enroll in parenting courses.

The caseworker testified that he later learned that Alana had been released from jail and had enrolled in a residential substance abuse treatment center called Restore, Inc. This program was chosen by Alana and her criminal defense attorney without OCS's input or knowledge. Alana's attorney instructed Restore to complete an integrated assessment but did not give Restore access to OCS records about the family. The assessment recommended substance abuse treatment. The OCS caseworker testified that he accordingly updated Alana's case plan to include substance abuse treatment through Restore, despite seeing no indication that substance abuse contributed to the harm suffered by the children. The updated case plan continued to instruct Alana to obtain a domestic violence assessment. Alana obtained a domestic violence assessment in December 2022 but did not complete the recommended services at that time.

The caseworker described difficulty working with Restore staff. In particular he testified that Restore staff did not provide detailed updates on Alana's progress and that they dissuaded her from completing a domestic violence programming offered by a different service provider. The caseworker testified that Alana was unexpectedly discharged from Restore in September 2023 for breaking facility rules. After that, OCS lost contact with Alana.

A second OCS caseworker, who took over Alana's case in December 2023, testified that she attempted to contact Alana several times without success before

finally making contact in February 2024, one month before the termination trial. The worker testified that Alana had begun to take domestic violence programming just before trial began but had not yet completed it.

In closing argument OCS contended that the children were in need of aid and that the parents had not remedied their harmful conduct. It noted that despite its efforts, Alana had not engaged in services, such as domestic violence programming, that would address the specific harms that she caused the children.

In response Alana argued that her participation with OCS was limited due to her pending criminal case, but that she participated in her case plan to the best of her ability. She accused OCS of failing to make reasonable efforts to help her reunite with her children. She argued that her first caseworker did not assist her much. She also criticized OCS's assertion that she failed to take responsibility for her actions, arguing that doing so would jeopardize her criminal defenses. Alana requested more time to work with the new caseworker and to start visitation with her children.

The superior court issued an order terminating Alana's parental rights.[3] It found that Linus suffered "horrific abuse" by Lucien and Alana, being "bound for extensive periods of time, blindfolded, and beaten." Noting that each parent blamed the other, the court did not determine whether Lucien or Alana personally inflicted the abuse. It reasoned that even if only one parent did so, the other parent did nothing to protect Linus and the other children. The court found by clear and convincing evidence that the four younger children were at risk of physical harm based on this abuse.[4] Likewise, the court found by clear and convincing evidence that the children were at substantial risk of mental injury from extended exposure to Linus's abuse.[5] Observing

---

[3]    *See* AS 47.10.088(a) (outlining requirements to terminate parental rights); *see also* CINA Rule 18(c) (indicating same).

[4]    AS 47.10.011(6).

[5]    AS 47.10.011(8).

that the cart to which Linus was bound "was essentially glued to the floor with dried urine," the court found that "[t]his alone prove[d] an utter failure by the parents to meet [Linus's] basic needs" and that the younger children were therefore in need of aid on grounds of neglect.[6]

The superior court then found by clear and convincing evidence that OCS made reasonable efforts to reunify the family and that Alana had failed to remedy the conduct that caused the children to be in need of aid. The court addressed these findings together in a brief paragraph:

> [OCS] has met its burden of proving reasonable efforts by clear and convincing evidence. Those efforts are summarized in Exhibit 30. As to [Lucien], those efforts were significantly constrained by his incarceration, but [OCS] did what it could within the confines of his incarceration. As to [Alana], Restore, Inc. turned out to be a poor decision to assist her, but it was her decision.

Finally, the superior court found by a preponderance of the evidence that termination of Alana's parental rights was in the children's best interests. It found that the children could not likely be returned to their parents in a reasonable time. The court noted that the parents had yet to resolve their criminal cases and had not had contact with the children in more than two years. It found that reunification would require the parents to address their underlying abusive conduct. While finding that both parents made "some efforts" to remedy their conduct, the court also found that "those efforts [were] tempered by incarceration or self-selection of improper programming." The court found that the abusive conduct towards Linus increased in severity over several years and that, because "neither parent ha[d] completed domestic violence programming, the harmful conduct [was] likely to continue."

---

[6] AS 47.10.011(9) (providing child is in need of aid if "conduct by or conditions created by the parent . . . have subjected the child or another child in the same household to neglect").

Alana appeals.[7]

## III. DISCUSSION

The superior court may not terminate parental rights unless it finds by clear and convincing evidence that the parent has not remedied the conduct that placed the children at substantial risk of harm.[8] Alana appeals the superior court's failure-to-remedy finding, arguing that the court's findings lack sufficient detail for appellate review. The superior court's findings, though scanty, are sufficient for meaningful appellate review. And although Alana waived, through inadequate briefing, any argument that the superior court's failure-to-remedy finding is wrong as a matter of fact, we note that this finding is firmly supported by the record.

### A. The Failure-To-Remedy Finding Is Sufficient For Appellate Review.

In child in need of aid cases, as in others, the superior court's findings "must be sufficient to support meaningful appellate review."[9] "[T]he superior court must provide findings sufficient to give a clear understanding of the grounds upon which it reached its decision."[10] "Whether the court's findings are sufficiently clear is a matter of law which we review de novo."[11]

Alana argues that the superior court's finding that she failed to remedy the conduct that placed her children at risk is conclusory, fails to identify specific facts, and

---

[7]    Lucien did not participate in Alana's appeal.

[8]    AS 47.10.088(a).

[9]    *Annette H. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 450 P.3d 259, 266 (Alaska 2019).

[10]    *Id.* at 266 (quoting *In re Adoption of Hannah L.*, 390 P.3d 1153, 1157 n.16 (Alaska 2017); *see also Price v. Eastham*, 128 P.3d 725, 726 n.4, 727 (Alaska 2006) (recognizing similar duty rising from Alaska Civil Rule 52's command for trial court to "find the facts specially").

[11]    *Miller v. Miller*, 105 P.3d 1136, 1140 (Alaska 2005).

fails to explain a link between the finding and the conduct that placed the children at risk.

Although it is true that the court's decision did not expressly tie its failure-to-remedy finding to specific facts in the record, we can discern from findings the court made elsewhere in its decision why it found that Alana failed to remedy the conduct underlying Linus's abuse. We do not "invariably require that the findings and conclusions be properly labeled . . . so long as the record clearly indicates that the court considered the matter and resolved each critical factual dispute."[12]

The specific findings the court made when ruling that the children were in need of aid and that termination was in their best interests clearly show why the court found that Alana did not remedy her conduct. The superior court found that Alana did nothing to protect Linus from being "bound for extensive periods of time, blindfolded, and beaten" in front of the other children, so neglected that the metal cart he was tied to was "essentially glued to the floor with dried urine."[13] It found that this conduct "ha[d] occurred for many years with increasing severity." The court incorporated by reference an exhibit detailing the list of OCS's efforts to reunite the family, which included services related to parenting, domestic violence, and mental health, and support for her substance abuse treatment. It found that Alana chose "improper programming" and did not complete domestic violence programming. And the court found that because she had not completed that work, her "harmful conduct [was] likely to continue." The basis for the court's failure-to-remedy finding is clear. So is the

---

[12] *Crittell v. Bingo*, 36 P.3d 634, 639 (Alaska 2001) (quoting *Urb. Dev. Co. v. Dekreon*, 526 P.2d 325, 328 (Alaska 1974)) (applying Alaska R. Civ. P. 52(a)).

[13] As noted earlier, the court did not find whether she personally inflicted the abuse on Linus, finding it sufficient that nothing was done to protect Linus from this extreme and longstanding abuse.

connection between Alana's failure to remedy and the conduct that caused the children to be in need of aid.

Indeed, the basis for the court's decision is even clearer when considered in light of Alana's closing argument at trial.[14] She did not argue that she had remedied her conduct. Rather, she blamed OCS for not doing more to help her, faulted OCS for not intervening more actively with Restore, and argued that she should be given more time to complete the steps outlined in her case plan. She told the superior court that she was "at th[at] point engaged in . . . activities that . . . she was unable to do while at Restore," which she said was "simply not a good program." Because Alana did not maintain that she had actually remedied her conduct, the superior court's findings, though brief, adequately explain why it found she had not done so. Therefore, the superior court's ruling is detailed enough for appellate review.

**B.**     **Alana Waived Any Argument That The Failure-To-Remedy Finding Is Factually Wrong, But We Nevertheless Conclude The Court Did Not Clearly Err.**

Beyond arguing that the superior court's findings were insufficient for appellate review, Alana did not squarely argue that the court erred as a factual matter in finding that she failed to remedy her conduct. Alana highlighted some testimony by staff at Restore that was favorable to her and critical of OCS. But she did not explain how this testimony undercuts the court's finding that she did not do the work necessary to remedy the conduct that led her to ignore the longstanding and horrific torture of a young child in her home. Therefore, we agree with OCS that she waived this argument

---

[14]     *Cf. Mapco Express, Inc. v. Faulk*, 24 P.3d 531, 543 (Alaska 2001) (concluding damages finding was "adequately explained by the computations" in opposing party's motion for reconsideration "read in conjunction with evidence presented at the trial").

due to inadequate briefing.[15]  Even so, having reviewed the record, we see no clear error in the court's factual finding.

The record amply supports the court's factual finding that Alana failed to remedy her conduct.[16]  The relevant inquiry was whether, by the time the termination trial had begun, Alana "had remedied the problems that placed her children at risk and gained the necessary skills so that the children could be safely returned to her care."[17] Alana's children were adjudicated in need of aid due to risk of physical harm, mental injury, and neglect based on Alana's treatment of Linus.  To help Alana remedy that conduct, OCS created a case plan requiring Alana to engage in parenting courses, to obtain a domestic violence assessment and follow its recommendations, and to complete her substance abuse programming at Restore.  The superior court found that she did not complete these services, and Alana does not dispute this finding.  Nor do we see evidence that would seriously undercut the superior court's finding that, given Alana's failure to complete this work, her abusive conduct was likely to continue.

We recognize that Alana was in a difficult position given the criminal charges pending against her.  Acknowledging her parenting failures might have jeopardized her defense against the pending criminal charges stemming from Linus's abuse.  But because she did not complete the steps necessary to show that she could be trusted to protect the children from abuse and neglect, the superior court did not clearly err in finding, by clear and convincing evidence, that she failed to remedy the conduct that placed her children in need of aid.

---

**15**  *Frank E. v. State, Dep't of Health & Soc. Servs., Div. of Fam. & Youth Servs.*, 77 P.3d 715, 719 n.14 (Alaska 2003) (waiving implied argument as inadequately briefed on appeal).

**16**  *See Barbara P. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 234 P.3d 1245, 1253 (Alaska 2010) (treating court's finding that parent failed to remedy conduct as factual finding reviewed for clear error).

**17**  *Id.* at 1260.

## IV. CONCLUSION

We AFFIRM the order terminating Alana M.'s parental rights.